THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
NATHANIEL L. BACH, SBN 246518
  nbach@gibsondunn.com
MARISSA B. MOSHELL, SBN 319734
  mmoshell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone:  310.552.8500
Facsimile:   310.551.8741

Attorneys for Defendants Rachel Maddow,
MSNBC Cable L.L.C., NBCUniversal Media,
LLC, and Comcast Corporation

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., | CASE NO. 19-cv-1713-BAS-AHG |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT (CAL. CIV. PROC. CODE § 425.16)** |
| v. | |
| RACHEL MADDOW; COMCAST CORPORATION; NBCUNIVERSAL MEDIA, LLC; and MSNBC CABLE L.L.C., | **NO ORAL ARGUMENT UNLESS REQUESTED BY COURT** |
| Defendants. | Action Filed:  September 9, 2019 |
| | Judge:  Hon. Cynthia Bashant |
| | Courtroom 4B |
| | Hearing Date:  December 16, 2019 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................. 3

III.  LEGAL STANDARD ........................................................................... 5

IV.  ARGUMENT......................................................................................... 6

    A.  Plaintiff's Claim Arises from Ms. Maddow's Exercise of Her Free Speech Rights on a Public Issue. ................................. 6

    B.  Plaintiff Cannot Establish That It Will Prevail on Its Defamation Claim, and Its Complaint Must Therefore Be Struck. ............................. 7

        1.  Ms. Maddow's Comment Is Fully Protected Opinion.................... 8

            a.  Ms. Maddow's Opinion Is Based on Disclosed Facts and Thus Fully Protected.......................................... 8

            b.  Ms. Maddow's Commentary, in Context, Does Not Imply Any Additional Objective Facts Capable of Being Proven False. ................................................. 11

                (i)  The Broad Context of Ms. Maddow's Comment Confirms It Is Protected Opinion. ............................. 12

                (ii)  The Specific Context of Ms. Maddow's Comment Also Confirms It Is Protected Opinion. ................................................................. 14

                (iii)  Ms. Maddow's Comment Is Not Susceptible of Being Proven True or False and Therefore Is Not Actionable. ......................................... 17

        2.  Ms. Maddow's Comment Does Not Have the Defamatory Meaning—That OAN Is Financed by Russia and Thus Guilty of Treason—That Plaintiff Advances. ............................. 18

        3.  Even If It Were Not Opinion, Ms. Maddow's Comment is Non-Actionable Because Plaintiff Confirms It Is Substantially True. .......................................... 21

V.  CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Baker v. L.A. Herald Exam'r,*
   42 Cal. 3d 254 (1986) ..................................................................... 10, 11, 12, 13

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................................................ 6

*Buckley v. Littell,*
   539 F.2d 882 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977) ........................... 17

*CACI Premier Tech., Inc. v. Rhodes,*
   536 F.3d 280 (4th Cir. 2008) .......................................................................... 16

*Campanelli v. Regents of Univ. of Cal.,*
   44 Cal. App. 4th 572 (1996) ........................................................................... 21

*Citizens United v. FEC,*
   558 U.S. 310 (2010) ...................................................................................... 14

*Cochran v. NYP Holdings, Inc.,*
   58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd and adopted*, 210 F.3d
   1036 (9th Cir. 2000) ..................................................................... 9, 10, 12, 15, 16

*Davis v. Elec. Arts Inc.,*
   775 F.3d 1172 (9th Cir. 2015) ........................................................................... 7

*Dodds v. ABC, Inc.,*
   145 F.3d 1053 (9th Cir. 1998) ...................................................................... 8, 18

*Franklin v. Dynamic Details, Inc.,*
   116 Cal. App. 4th 375 (2004) ......................................................................... 19

*Gardner v. Martino,*
   563 F.3d 981 (9th Cir. 2009) ....................................................................... 9, 12

*Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler,*
   398 U.S. 6 (1970) ........................................................................................... 17

*Gregory v. McDonnell Douglas Corp.,*
   17 Cal. 3d 596 (1976) ................................................................................. 7, 13

*Haynes v. Alfred A. Knopf, Inc.,*
   8 F.3d 1222 (7th Cir. 1993) ............................................................................. 10

*Heuer v. Kee,*
   15 Cal. App. 2d 710 (1936) ............................................................................. 21

*Hilton v. Hallmark Cards,*
   599 F.3d 894 (9th Cir. 2010) ............................................................................ 6

MEMORANDUM IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE

Gibson, Dunn & Crutcher LLP

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988).................................................................... 14, 17

*Info. Control Corp. v. Genesis One Comput. Corp.*,
   611 F.2d 781 (9th Cir. 1980) .......................................................... 13

*John Doe 2 v. Superior Court*,
   1 Cal. App. 5th 1300 (2016) ............................................................. 9

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .................................................. 9, 18, 20

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) .......................................................... 12

*La Liberte v. Reid*,
   No. 18-CV-5398-DLI, Slip Op. at 13 (E.D.N.Y. Sept. 30, 2019)............................ 9

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ........................................................ 5, 7

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991)..................................................................... 21

*Metabolife Int'l, Inc. v. Wornick*,
   72 F. Supp. 2d 1160 (S.D. Cal. 1999), *rev'd in part on other grounds*,
   264 F.3d 832 (9th Cir. 2001) ........................................................ 2, 6

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990).................................................... 10, 11, 15, 17, 19

*Moyer v. Amador Valley Joint Union High Sch. Dist.*,
   225 Cal. App. 3d 720 (1990)........................................................... 11

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964).................................................................. 13, 14

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
   190 F.3d 963 (9th Cir. 1999) ........................................................... 2

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ................................................ 8, 13, 18, 19

*Old Dominion Branch No. 496 v. Austin*,
   418 U.S. 264 (1974).................................................................. 8, 17

*In re Outlaw Labs., LP Litig.*,
   352 F. Supp. 3d 992 (S.D. Cal. 2018) ................................................... 5

*Page v. Oath Inc.*,
   2018 WL 1474620 (S.D.N.Y. Mar. 26, 2018)............................................... 7

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ................................................... 8, 11, 12

MEMORANDUM IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE

*Phila. Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986) ................................................................................. 21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................. 5, 6

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*,
   136 Cal. App. 4th 464 (2006) ...................................................................... 7

*Scott v. McDonnell Douglas Corp.*,
   37 Cal. App. 3d 277 (1974) .................................................................. 14, 15

*Standing Comm. on Discipline v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) .................................................. 9, 10, 15, 18

*Traditional Cat Ass'n, Inc. v. Gilbreath*,
   118 Cal. App. 4th 392 (2004) ...................................................................... 7

*Troy Group, Inc. v. Tilson*,
   364 F. Supp. 2d 1149 (2005) ...................................................................... 20

*Underwager v. Channel 9 Austl.*,
   69 F.3d 361 (9th Cir. 1995) .......................................................... 12, 15, 17

*Unelko Corp. v. Rooney*,
   912 F.2d 1049 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991) .......... 12

*Vogel v. Felice*,
   127 Cal. App. 4th 1006 (2005) ............................................................ 21, 22

*Wynn v. Chanos*,
   75 F. Supp. 3d 1228 (N. D. Cal. 2014) ...................................................... 20

*Yorty v. Chandler*,
   13 Cal. App. 3d 467 (1970) .................................................................. 11, 14

**Statutes**

Code. Civ. Proc., § 425.16 ..................................................................... 2, 5, 6

**Other Authorities**

*Merriam-Webster Online Dictionary*, *available at* https://www.merriam-
   webster.com/dictionary/literally (last accessed Oct. 21, 2019) ................ 16

Kevin Poulsen, Trump's New Favorite Channel Employs Kremlin-Paid
   Journalist, Daily Beast (July 22, 2019),
   https://www.thedailybeast.com/oan-trumps-new-favorite-channel-
   employs-kremlin-paid-journalist ................................................................... 1

*The Rachel Maddow Show:  Staffer on Trump-Favored Network Is on
   Propaganda Kremlin Payroll* (MSNBC television broadcast July 22,
   2019), available at https://www.msnbc.com/rachel-
   maddow/watch/staffer-on-trump-favored-network-is-on-propaganda-
   kremlin-payroll-64332869743 ..................................................................... 3

Gibson, Dunn &
Crutcher LLP

iv

1

Restatement (Second) of Torts § 566 ............................................................... 9

5 B. Witkin, Summary of California Law § 495 (9th ed. 1988).................................... 21

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

MEMORANDUM IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE

## I.     INTRODUCTION

Plaintiff Herring Networks, Inc., the owner of One America News Network ("OAN"), alleges it has been defamed by Rachel Maddow based on a single rhetorical flourish—her comment that OAN's employment of a reporter who is also paid by a Russian state-backed news organization renders OAN "paid Russian propaganda." Plaintiff's claim is baseless.  Ms. Maddow's comment is fully protected by California law and the First Amendment because it is an opinion based on fully disclosed facts, is not susceptible of the meaning Plaintiff ascribes to it, and—even if it could be considered factual—is substantially true.  Because Ms. Maddow's comment concerns a "public issue" and Plaintiff cannot establish a "probability" of prevailing on its defamation claim, this Court should strike the Complaint pursuant to California's anti-SLAPP statute, California Code of Civil Procedure section 425.16.

On July 22, 2019, *The Daily Beast* published an article stating that OAN employs a U.S. politics reporter named Kristian Rouz who is also a paid contributor to Sputnik, a state-financed news propaganda arm of the Russian government.  *See* Compl. ¶¶ 24, 27, 29; Request for Judicial Notice, Ex. A (Kevin Poulsen, Trump's New Favorite Channel Employs Kremlin-Paid Journalist, Daily Beast (July 22, 2019), https://www.thedailybeast.com/oan-trumps-new-favorite-channel-employs-kremlin-paid-journalist).  That evening, Ms. Maddow opened *The Rachel Maddow Show* on MSNBC with a short segment expressing her views about *The Daily Beast* story, in which she observed, in part:

> We literally learned today that that outlet the president is promoting shares staff with the Kremlin. . . .  In this case, the most obsequiously pro-Trump right wing news outlet in America really literally is paid Russian propaganda.  The[ir] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government.

Compl., Ex. A at 3.

Plaintiff contends the "paid Russian propaganda" phrase is false and defamatory because Plaintiff construes it to mean that *OAN* itself is Russian-financed and therefore "amounts to a charge of treason and disloyalty to the United States of America."  *Id.*

Gibson, Dunn & Crutcher LLP

1

¶¶ 38, 52. In leveling this charge, Plaintiff utterly ignores the context of Ms. Maddow's comment, which is nothing more than a vivid, hyperbolic turn of phrase sandwiched between precise factual recitations that indisputably and accurately state the facts from *The Daily Beast* article. *See id.*, Ex. A at 3.

Plaintiff does not contest the facts reported by *The Daily Beast*. To the contrary, its Complaint confirms and elaborates on them, conceding that for more than four years, Mr. Rouz has written approximately 1,300 articles for Sputnik and was paid about $11,500 per year for doing so (*id.*, Ex. B at 4), and that "Sputnik News is affiliated with the Russian government" (*id.* ¶ 24). When viewed in context—as they must be—Ms. Maddow's words make clear that, when she called this arrangement "paid Russian propaganda," she was expressing her opinion and astonishment that OAN has a paid staffer who also works for a Russian organization known for distributing pro-Kremlin propaganda.

Ms. Maddow, MSNBC Cable L.L.C., NBCUniversal Media, LLC, and Comcast Corporation ("Defendants") bring this anti-SLAPP special motion to strike to put an end to this meritless lawsuit at its outset. "To ensure that participation in public debate is not 'chilled,' the anti-SLAPP statute establishes a procedure for early dismissal of meritless lawsuits against public speech." *Metabolife Int'l, Inc. v. Wornick*, 72 F. Supp. 2d 1160, 1165 (S.D. Cal. 1999), *rev'd in part on other grounds*, 264 F.3d 832 (9th Cir. 2001). Because Plaintiff's claim is unquestionably based on Ms. Maddow's speech on a "public issue" and because Plaintiff cannot establish a "probability" of success on its claim as a matter of both California law and the First Amendment (Cal. Civ. Proc. Code § 425.16), the Court should strike the Complaint with prejudice and award Defendants their attorneys' fees under the anti-SLAPP statute.[1]

---

[1] Cal. Civ. Proc. Code § 425.16(c)(1) ("[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972–73 (9th Cir. 1999) (anti-SLAPP law's mandatory fees provision applicable in federal court).

Gibson, Dunn & Crutcher LLP

## II.   FACTUAL BACKGROUND

Plaintiff owns and operates OAN, which, it alleges, "has become an important voice in American news, providing Americans with a conservative alternative to the major liberal news outlets."  Compl. ¶ 1.  On July 22, 2019, *The Rachel Maddow Show* included a segment commenting on an article published that same day in *The Daily Beast*.  The article reported that one of OAN's politics reporters, Mr. Rouz, also works for and is paid by Sputnik, a pro-Kremlin news organization funded by the Russian government.  *Id.* ¶¶ 24, 35–38; Notice of Lodging, Ex. 1 (*The Rachel Maddow Show: Staffer on Trump-Favored Network Is on Propaganda Kremlin Payroll* (MSNBC television broadcast July 22, 2019), available at https://www.msnbc.com/rachel-maddow/watch/staffer-on-trump-favored-network-is-on-propaganda-kremlin-payroll-64332869743).  *The Daily Beast* article reported, and Plaintiff confirms, that Mr. Rouz "began writing articles for Sputnik News in 2014," and that "Sputnik News is affiliated with the Russian government."  Compl. ¶ 24.  Plaintiff does not allege that the content of *The Daily Beast* article is incorrect or actionable.

The documents Plaintiff attaches to its Complaint also confirm that during more than four years of working for Sputnik News, Mr. Rouz has written approximately 1,300 articles and was paid about $11,500 per year for doing so.  *Id.*, Ex. B at 5 ("Statement on My Writing for Sputnik News").  The article reported, and Ms. Maddow reiterated, the U.S. intelligence community's prior finding that Sputnik's propaganda efforts played a key role in Russia's interference in the 2016 U.S. election, and that Sputnik's U.S. affiliate was required to formally register as a foreign agent.  *Id.*, Ex. A at 3.

Ms. Maddow's approximately three-and-a-half minute segment about *The Daily Beast* report was a lively and rhetorical commentary on what she called the "single most like sparkly story" in what had been "a more ridiculous than most day in the news."  *Id.*  A review of the video (and its transcript) makes clear that Ms. Maddow was commenting solely about the "scoop from reporter Kevin [Poulsen]," which

"sussed out that Trump's favorite[,] more Trumpier than Fox TV network . . . has a full time on air reporter who covers U.S. politics who is simultaneously on the payroll of the Kremlin." *Id.* The video and transcript also make clear that her comments were not based on any implied independent or undisclosed information. Her report on *The Daily Beast* article included the following comments:

> I mean, there is a lot of news today, but among the giblets the news gods dropped off their plates for us to eat off the floor today is the actual news that this super right wing news outlet that the president has repeatedly endorsed as a preferable alternative to Fox News, because he thinks Fox is insufficiently pro-Trump, so now he likes this [] other outlet better. *We literally learned today that that outlet the president is promoting shares staff with the Kremlin.*

> I mean, what? I mean, it's an easy thing to throw out, you know, like an epitaph in the Trump era, right? Hey, that looks like Russian propaganda. In this case, *the most obsequiously pro-Trump right wing news outlet in America really literally is paid Russian propaganda. Th[eir] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government.*

> I mean, this is the kind of news we are supposed to take in stride these days. And we do our best.

*Id.*, Ex. A at 3–4 (emphasis added). Ms. Maddow also observed that:

- "at the same time he works for Trump's favorite One America News team, [Rouz] is also being paid by the Russian government to produce government-funded pro-Putin propaganda for a Russian government funded propaganda outfit called Sputnik";

- "Sputnik, of course, had a key role in the Russian government's intervention in the 2016 election to help Trump, according to the intelligence committee`s assessment of that attack"; and

- "Sputnik has also formally registered with the U.S. Justice Department as an agent of a foreign power."

*Id.*, Ex. A at 2–4.

Out of all these comments, Plaintiff bases its entire claim on Ms. Maddow's rhetorical characterization of this situation as "really literally [] paid Russian propaganda." *Id.* ¶¶ 38, 46. Plaintiff asserts that statement is false and defamatory because "OAN is wholly owned and financed by the Herring[]" family, and "has never been paid or received a penny from Russia or the Russian government." *Id.* ¶ 5. Plaintiff alleges the comment "constitutes defamation *per se* because it is damaging on

1   its face to Plaintiff's business and reputation" and "amounts to a charge of treason and

2   disloyalty to the United States of America." *Id.* ¶ 52.

## III.   LEGAL STANDARD

4   California's anti-SLAPP law permits courts to root out baseless lawsuits aimed

5   at chilling the exercise of free speech—*i.e.*, "strategic lawsuits against public

6   participation."  In enacting the anti-SLAPP law, the legislature found "a disturbing

7   increase in lawsuits brought primarily to chill the valid exercise of the constitutional

8   rights of freedom of speech" and to that end, mandated that the law "shall be construed

9   broadly."  Cal. Civ. Proc. Code § 425.16(a).  Ninth Circuit courts apply the anti-

10  SLAPP statute in diversity actions like this one.  *See Planned Parenthood Fed'n of*

11  *Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

12      Courts employ a two-step inquiry to determine if a complaint is subject to a

13  defendant's special motion to strike.  First, a defendant must make a prima facie case

14  that a "cause of action against [it] aris[es] from any act of that person in furtherance of

15  [its] right of petition or free speech under the United States Constitution or the

16  California Constitution in connection with a public issue."  Cal. Civ. Proc. Code

17  § 425.16(b)(1).  If that showing is made, the burden shifts to the plaintiff at the second

18  prong of the analysis to "establish[] that there is a probability that the plaintiff will

19  prevail on the claim."  *Id.*; *In re Outlaw Labs., LP Litig.*, 352 F. Supp. 3d 992, 1010

20  (S.D. Cal. 2018).  If a plaintiff cannot meet its burden on this second step, "it has no

21  possibility of success on the merits" and the Court should grant the motion to strike.

22  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

23      Where, as here, "a defendant makes a special motion to strike based on alleged

24  deficiencies in the plaintiff's complaint, the motion must be treated in the same manner

25  as a motion under Rule 12(b)(6)," and no discovery is necessary or required before the

26  Court can rule on Defendants' anti-SLAPP motion.  *Planned Parenthood,* 890 F.3d at

27  834 (citation omitted).  In construing an anti-SLAPP motion under Rule 12(b)(6),

28  courts accept as true the allegations in the complaint, but are not bound to accept as

true a legal conclusion couched as a factual argument, "and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.   ARGUMENT

### A.   Plaintiff's Claim Arises from Ms. Maddow's Exercise of Her Free Speech Rights on a Public Issue.

Under California's anti-SLAPP law, causes of action "arising from any act of [a defendant] in furtherance of the [defendant's] right of . . . free speech . . . in connection with a public issue" are subject to a special motion to strike.  Cal. Civ. Proc. Code § 425.16(b)(1).  Statements made on a television broadcast about a public issue trigger the statute's protections.  *See id.* § 425.16(e)(3) (anti-SLAPP law applies to "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest"); *Metabolife Int'l*, 72 F. Supp. 2d at 1165 (statements at issue were "published by Defendants as part of a widely disseminated television broadcast, which is undoubtedly a public forum").

Plaintiff's claim arises from Ms. Maddow's comment about a news report of indisputable public interest:  that OAN, a U.S. news organization—an allegedly "important voice in American news," and "conservative alternative to the major liberal news outlets" (Compl. ¶ 1), praised by the President—employs a reporter who was also being paid to write articles for Sputnik, which the U.S. intelligence community determined played a role in spreading propaganda as part of Russia's effort to interfere in and influence the 2016 presidential election.  Ms. Maddow's commentary about *The Daily Beast* story touched on Russian interference in the 2016 election, ongoing Russian influence in domestic U.S. elections and affairs, President Trump, and bias in news media—each itself an issue of public interest.  *See, e.g., id.*, Ex. A at 3 (reporting that Sputnik News "had a key role in the Russian government's intervention in the 2016 election to help Trump, according to the intelligence committee's assessment of that attack"); *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010) (noting that

Ninth Circuit courts have "construe[d] 'public issue or issue of public interest' . . . broadly in light of the statute's stated purpose to encourage participation in matters of public importance or consequence"); *see also Page v. Oath Inc.*, 2018 WL 1474620, at *2 (S.D.N.Y. Mar. 26, 2018) (speech concerning "Russian interference in . . . the 2016 presidential election" "directly implicates matters of public concern").

Because Defendants have satisfied prong one of the anti-SLAPP inquiry, the burden shifts to Plaintiff to establish a probability of prevailing on its claim.

## B.   Plaintiff Cannot Establish That It Will Prevail on Its Defamation Claim, and Its Complaint Must Therefore Be Struck.

Under the second prong of the anti-SLAPP inquiry, the burden shifts to Plaintiff "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261.  Courts consider not only the "substantive merits of the plaintiff's complaint," for which the plaintiff bears the burden of proof, but also "all available defenses . . . including, but not limited to constitutional defenses." *Traditional Cat Ass'n, Inc. v. Gilbreath*, 118 Cal. App. 4th 392, 398 (2004).  A defendant carries its burden to show that an affirmative defense is available if it establishes "a probability of prevailing" on the merits of the defense. *Davis v. Elec. Arts Inc.*, 775 F.3d 1172, 1177 (9th Cir. 2015) (quoting *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 136 Cal. App. 4th 464, 477 (2006)). Accordingly, Plaintiff's claim must be dismissed if it "presents an insufficient legal basis for [the claim]." *Makaeff*, 715 F.3d at 261.

Here, Plaintiff cannot establish that there is a reasonable probability it will prevail on its defamation claim.  As a threshold matter, to prevail under both California law and the First Amendment, Plaintiff would have to demonstrate that Ms. Maddow—when she gave her opinion that colorfully characterized *The Daily Beast*'s report—made a "false statement of *fact*" that defamed it and harmed its reputation. *Gregory v. McDonnell Douglas Corp.*, 17 Cal. 3d 596, 600 (1976) ("An essential element of libel . . . is that the publication in question must contain a false statement of

*fact*."); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 283 (1974) ("The sine qua non of recovery for defamation . . . is the existence of falsehood."). It cannot do so.

*First*, Ms. Maddow's comment is fully protected opinion because (a) it was based on disclosed facts; and (b) it does not imply any additional objective facts such that it is capable of being proven false. *Second*, Plaintiff cannot demonstrate that her comment is "capable of the defamatory meaning [plaintiff] ascribes to it" when interpreted "from the standpoint of the average [viewer]." *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993). *Third*, even if Ms. Maddow's statement were determined not to be protected opinion, Plaintiff's claim is affirmatively barred because Plaintiff's own allegations confirm that her statement is substantially true: OAN's reporter *is* actually paid by a Russian government-financed news organization. As a result, the Court should strike the Complaint with prejudice and award attorneys' fees and costs to Defendants.

### 1.    Ms. Maddow's Comment Is Fully Protected Opinion.

#### a.    Ms. Maddow's Opinion Is Based on Disclosed Facts and Thus Fully Protected.

Ms. Maddow expressly disclosed the underlying facts on which she based her "paid Russian propaganda" comment—those reported in *The Daily Beast* article—and Plaintiff does not allege that any of the facts reported in that article are false or defamatory. Indeed, Plaintiff concedes they are true and amplifies them by documenting that Mr. Rouz has in fact written over 1,300 articles for Sputnik. *See* Compl., Ex. B at 5. This is fatal to Plaintiff's defamation claim: as the Ninth Circuit has repeatedly held, "when a speaker outlines the factual basis for [her] conclusion, [her] statement is protected by the First Amendment." *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995); *see also Dodds v. ABC, Inc.*, 145 F.3d 1053, 1067 (9th Cir. 1998) (an opinion "based on an implication arising from disclosed facts is not actionable when the disclosed facts themselves are not actionable"); *Standing Comm.*

*on Discipline v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) ("A statement of opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning."); *accord John Doe 2 v. Superior Court*, 1 Cal. App. 5th 1300, 1314 (2016) (citing Restatement (Second) of Torts § 566 cmt. b, p. 171).

In *Gardner v. Martino*, for example, the Ninth Circuit held that a talk-show host's comments based solely on facts asserted by an on-air telephone caller were protected opinion, noting that the radio show contained "drama [and] hyperbolic language."  563 F.3d 981, 988 (9th Cir. 2009).  The *Gardner* court found that "Because Martino's 'lying' statements were made in reliance on the facts outlined on air by [the caller] in the minutes preceding his commentary . . . no reasonable listener could consider Martino's comments to imply an assertion of objective facts rather than an interpretation of the facts equally available to Martino and to the listener."  *Id.* ("As we stated in *Partington*, when it is clear that the allegedly defamatory statement is 'speculat[ion] on the basis of the limited facts available,' . . . it represents a non-actionable personal interpretation of the facts" (quoting *Partington*, 56 F.3d at 1156)); *La Liberte v. Reid*, No. 18-CV-5398-DLI, Slip Op. at 13 (E.D.N.Y. Sept. 30, 2019) (applying California anti-SLAPP law to strike defamation claim based on a tweet because it was opinion and did not "imply[] additional facts unavailable to the reader" (citing *Gardner*, 563 F.3d at 988)).

Here, "[t]he facts underlying the subject of the alleged defamatory statement are disclosed in the [segment] and are not themselves alleged to be defamatory."  *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1122 (C.D. Cal. 1998), *aff'd and adopted*, 210 F.3d 1036 (9th Cir. 2000); *see* Compl. ¶¶ 27–28 (criticizing reporter, but not questioning article's accuracy).  Just as in *Cochran*, Plaintiff concedes the thrust of the article's reporting—*i.e.*, that Mr. Rouz is both employed by OAN and works for and is paid by a government-funded Russian news organization.  *Id.* ¶¶ 23–24.  Because Ms. Maddow's "loose, figurative" language, *Knievel v. ESPN*, 393 F.3d 1068,1075 (9th Cir. 2005), was "based on facts available to both the writer and the reader, [it] implied

only the [speaker's] interpretations of the publicly known facts," and is therefore protected opinion, *Cochran*, 58 F. Supp. 2d at 1122.  *See also Yagman*, 55 F.3d at 1439 ("'[A]n opinion which is unfounded reveals its lack of merit when the opinion-holder discloses the factual basis for the idea'; readers are free to accept or reject the author's opinion based on their own independent evaluation of the facts" (citation omitted)); *accord Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

Further, Ms. Maddow's commentary did not imply that any undisclosed fact formed the basis of her comment.  To the contrary, the segment makes clear that the entire basis for her commentary is *The Daily Beast*'s "sparkly story" and "scoop" (Compl., Ex. A at 3), and she nowhere indicates that she has separate knowledge about Mr. Rouz or the funding of OAN other than from that article.  *See id.*, Ex. A at 4 ("We literally learned today [from the article] that that outlet the president is promoting shares staff with the Kremlin.").

As in *Cochran*, Ms. Maddow "does not even hint that her opinion is based on any additional, undisclosed facts" beyond those she stated on air, all of which were drawn from a publicly available news article.  58 F. Supp. 2d at 1122; *see also Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 267 (1986) (finding that "the conversation was 'being used in a metaphorical, exaggerated or even fantastic sense' and did not imply the existence of any undisclosed facts" (citation omitted)).  Her statement is thus pure opinion and not susceptible of sustaining a claim for defamation.  *Cf. Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 27 n.3 (1990) (explaining difference between opinion implying undisclosed facts and opinion setting forth factual basis therefore, and confirming the latter is non-actionable).

### b.    Ms. Maddow's Commentary, in Context, Does Not Imply Any Additional Objective Facts Capable of Being Proven False.

Even putting aside that she fully disclosed the facts upon which her comments were based, Ms. Maddow's "paid Russian propaganda" comment qualifies as non-actionable opinion because, as a matter of law, no reasonable factfinder could conclude that her comment, when viewed in context, implies an assertion of undisclosed, objective, provably false facts. *See Partington*, 56 F.3d at 1153.

In *Milkovich*, the Supreme Court made clear that statements are more likely to be considered opinions when they contain "loose, figurative, or hyperbolic language which would negate the impression" that a speaker was seriously making a factual defamatory statement. 497 U.S. at 21. The Ninth Circuit has repeatedly enforced this principle. *See, e.g.*, *Partington*, 56 F.3d at 1153. California courts likewise have consistently provided robust protection for expressions of opinion and rhetorical language. *See*, *e.g.*, *Baker*, 42 Cal. 3d at 264 ("If the exercise of literary style were always subject to the threat of a defamation action, not only would the content of messages ultimately be altered, but the vigorous and vital public debate essential to the democratic process would be 'tempered to polite sparring'" (citation omitted)); *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal. App. 3d 720, 724 (1990) (noting that "*Milkovich* did not substantially change [California's opinion] principles; it underscored that in cases such as this, raising First Amendment issues, a reviewing court must make an independent examination of the whole record in order to ensure that there is no infringement of free expression"); *Yorty v. Chandler*, 13 Cal. App. 3d 467, 472–73 (1970) (holding that "mere expression of opinion or severe criticism is not libelous" and that newspaper "has a right to express its views on who should be appointed to public office" through "rhetorical hyperbole").

To determine if a statement is protected opinion as opposed to a statement implying an assertion of objective facts, the Ninth Circuit "examine[s] the totality of

the circumstances in which" the challenged statement was made, using a three-part inquiry:

> First, we look at the statement in its *broad context*, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.  Next we turn to the *specific context* and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation.  Finally, we inquire *whether the statement itself is sufficiently factual to be susceptible of being proved true or false.*

*Underwager v. Channel 9 Austl.,* 69 F.3d 361, 366 (9th Cir. 1995) (citing *Partington*, 56 F.3d at 1153, and *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991)).[2]

### (i)   The Broad Context of Ms. Maddow's Comment Confirms It Is Protected Opinion.

"The Court first considers the statement in the broad context in which it was made, including the general tenor of the entire work." *Cochran*, 58 F. Supp. 2d at 1121.  As here, statements made in the context of opinion- or commentary-focused media are presumed to be non-actionable. *See, e.g.*, *id.* at 1123, 1126 (confirming that the setting of the alleged defamatory statement is an opinion column and finding statement non-actionable opinion).

Statements uttered in political discussion are also presumptively protected opinion. *See Koch v. Goldway*, 817 F.2d 507, 508–10 (9th Cir. 1987) (statement by

---

[2]   Ninth Circuit courts sometimes frame the totality of the circumstances test in slightly different terms but with the same effect:  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates the impression, and (3) whether the statement in question is susceptible of being proved true or false." *Gardner*, 563 F.3d at 987.

And California courts employ a similar totality of the circumstances test:  "First, the language of the statement is examined.  For words to be defamatory, they must be understood in a defamatory sense. . . .  Next, the context in which the statement was made must be considered. . . .  This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed." *Baker*, 42 Cal. 3d at 260–61.

political opponent suggesting that the other may have been a Nazi war criminal was not actionable).  And comments are found to be protected opinion when made in a forum in which the "audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole." *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (citation omitted); *see also id.* ("[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate" (quoting *Gregory*, 17 Cal. 3d at 601)).  Therefore, the California Supreme Court has confirmed that, depending on the context, "language which generally might be considered as statements of fact may well assume the character of statements of opinion." *Gregory*, 17 Cal. 3d at 601.

Here, the allegedly actionable comment was made as part of Ms. Maddow's show, which is one of the leading cable news programs in America and the highest rated on MSNBC.  Compl. ¶ 22.  Plaintiff alleges that MSNBC "caters to and promotes liberal politics" (*id.* ¶ 19) and that Ms. Maddow "is a liberal television host" (*id.* ¶ 30).  Her comment must therefore be examined in the broad context of what Plaintiff itself characterizes as an opinion-laden, politics-focused discussion on an evening cable news show.  *See id.* ¶¶ 19, 30.  In this context, an "average" viewer would understand Ms. Maddow's statements as being colorful commentary on *The Daily Beast*'s reporting, *Norse*, 991 F.2d at 567—not asserting facts regarding the ownership and financing of OAN or whether it is guilty of treason.

To impose liability for such rhetorical speech on public issues in this context would have a severe chilling effect on political discussion and public debate, unlawfully punishing "would-be critics" who "may be deterred from voicing their criticism." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279 (1964); *see also Baker*, 42 Cal. 3d at 268–69 ("The threat of a clearly nonmeritorious defamation action ultimately chills the free exercise of expression. . . .  The press cannot be codified if it is to be free.  To be truly free, the press must know it is free.").  "First Amendment

freedoms," like those at issue here, "need breathing space to survive." *Citizens United v. FEC*, 558 U.S. 310, 329 (2010) (citation omitted); *id.* at 340 ("[P]olitical speech must prevail against laws that would suppress it.").  Indeed, the Supreme Court has repeatedly affirmed the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Sullivan*, 376 U.S. at 270; *see also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988) (confirming that "[a]t the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern").  Accordingly, Plaintiff's efforts to punish Ms. Maddow's comment "would subvert the most fundamental meaning of a free press, protected by the First [Amendment]." *Yorty*, 13 Cal. App. 3d at 476 (citation omitted).

### (ii)   The Specific Context of Ms. Maddow's Comment Also Confirms It Is Protected Opinion.

Examining the specific context surrounding the allegedly actionable statement confirms it is protected opinion.  Plaintiff concedes, as it must, that Ms. Maddow's segment is titled "Staffer on Trump-favored network is on propaganda Kremlin payroll." Compl. ¶ 35.  That title confirms that the topic of the segment (which was the same topic of *The Daily Beast* article) was OAN's employment of a reporter who is also paid by a Russia-financed news organization—not, as Plaintiff alleges, who finances OAN or whether OAN's owner is treasonous, *id.* ¶¶ 49, 52.

The statement in question "must be considered in its entirety; [i]t may not be divided into segments and each portion treated as a separate unit." *Scott v. McDonnell Douglas Corp.*, 37 Cal. App. 3d 277, 291 n.11 (1974) (internal quotation marks and citations omitted).  Here, Plaintiff does precisely what the law prohibits, omitting crucial context of the statement at issue.  *Id.*  Ms. Maddow's comment was both preceded and immediately followed by multiple (at least four) specific, accurate facts

taken from *The Daily Beast* article (including that Mr. Rouz was paid by Sputnik) and nonfactual, rhetorical commentary and reaction ("I mean, this is the kind of news we are supposed to take in stride these days," Compl., Ex. A. at 4). Indeed, in the sentence *immediately following* the "paid Russian propaganda" remark, Ms. Maddow explains precisely what she meant by it: OAN's "on[-]air U.S. politics reporter is paid by the Russian government to produce propaganda for that government." *Id.*

Plaintiff alleges that Ms. Maddow's use of the term "literally" shows that the comment was not opinion but was actually intended to express or imply facts. *Id.* ¶¶ 41–42. But Plaintiff's myopic reliance on this word and exclusion of its immediate context directly contravenes the Ninth Circuit's totality of the circumstances test. *See Underwager*, 69 F.3d at 366; *see also Cochran*, 58 F. Supp. 2d at 1124 (viewing the words "history reveals" in context of allegedly actionable statement, which also includes figurative and hyperbolic language). Indeed, just examining the paragraph containing the allegedly actionable comment confirms its figurative and hyperbolic nature:

> I mean, what?  I mean, it's an easy thing to throw out, you know, like an epitaph in the Trump era, right?  Hey, that looks like Russian propaganda.  In this case, the most obsequiously pro-Trump right wing news outlet in America really literally is paid Russian propaganda.  The[ir] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government.

Compl., Ex. A at 4.  Apart from making clear that her interpretation of *The Daily Beast* article relates to Mr. Rouz (and not to OAN's owner), the rhetorical phrases "I mean, what?," "Hey, that looks like Russian propaganda," "obsequiously pro-Trump" and "really literally" are the type of rhetorical flourishes that are the hallmark of opinion when considered in their immediate context, and certainly within the broader context of Ms. Maddow's opinion-laden show as a whole.  *See Milkovich,* 497 U.S. at 21; *see also Yagman*, 55 F.3d at 1440 (statement that a district judge was "dishonest" must be weighed "in [the] context" of "a string of colorful adjectives Yagman used" to describe

the judge, which rendered the term "dishonest" merely one of "rhetorical hyperbole, incapable of being proved true or false"); *see also CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 302 (4th Cir. 2008) (finding allegedly defamatory statement "[t]hese guys literally fought on the side of [the former dictator in Zaire]" did not state actual facts about plaintiff).

Further undermining Plaintiff's emphasis on the use of the word "literally," that word has multiple meanings, including a figurative meaning in common parlance, and it is frequently used in a nonliteral manner as a rhetorical device. *See Literally*, *Merriam-Webster Online Dictionary*, *available at* https://www.merriam-webster.com/dictionary/literally (last accessed Oct. 21, 2019) (defined as "in effect: VIRTUALLY—used in an exaggerated way to emphasize a statement or description that is ***not literally true or possible***" (emphasis added)).

Looking beyond the paragraph containing her comment, Ms. Maddow's segment is replete with other colorful rhetorical hyperbole:

- "[T]he single most like sparkly story of the entire day is this scoop from reporter Kevin Paulson at 'The Daily Beast' who has sussed out that Trump's favorite more Trumpier than Fox TV network [employs an on-air reporter who is also paid by the Kremlin]. What?" Compl., Ex. A at 3.

- "[A]mong the giblets the news gods dropped off their plates for us to eat off the floor today is the actual news that this super right wing news outlet that the president has repeatedly endorsed as a preferable alternative to Fox News, because he thinks Fox is insufficiently pro-Trump, so now he likes this [] other outlet better. We literally learned today that that outlet the president is promoting shares staff with the Kremlin." *Id.* at 3–4.

- "I mean, this is the kind of news we are supposed to take in stride these days. And we do our best." *Id.* at 4.

Like in *Cochran*, the audience for *The Rachel Maddow Show* and those viewing the segment "would reasonably expect the alleged defamatory statement to constitute [] opinion, tucked in as it is, among numerous other statements of opinion in a recognizable opinion column." 58 F. Supp. 2d at 1125. The specific context of the comment confirms Plaintiff's inability to establish that it is a factual statement, as opposed to protected opinion.

### (iii)   Ms. Maddow's Comment Is Not Susceptible of Being Proven True or False and Therefore Is Not Actionable.

Nor is Ms. Maddow's take on *The Daily Beast* article susceptible of being proven true or false.  *See Underwager*, 69 F.3d at 366.  This factor ensures that "public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation."  *Milkovich*, 497 U.S. at 20 (quoting *Falwell*, 485 U.S. at 53–55).  It reflects the Supreme Court's longstanding principle that "a statement on matters of public concern *must be provable as false* before there can be liability under state defamation law."  *Id.* at 19–20 (emphasis added).

In *Milkovich*, the Supreme Court endorsed "the *Bresler–Letter Carriers–Falwell* line of cases," which "provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual."  *Id.* at 20 (quoting *Falwell*, 485 U.S. at 50).  In *Letter Carriers*, the Court rejected plaintiffs' efforts to make actionable the "loose, figurative" use of charged words, including the term "traitor" in a literary definition of a union "scab."  418 U.S. at 284, 286 (usage was "merely rhetorical hyperbole, a lusty and imaginative expression of the contempt felt by union members").  Similarly, in *Bresler*, a local newspaper published articles in which some people had characterized a real estate developer's negotiating position as "blackmail," and the developer sued for libel.  *Greenbelt Coop. Publ'g Ass'n, Inc. v. Bresler*, 398 U.S. 6, 7–8 (1970).  The Supreme Court rejected the argument that the use of the term "blackmail" was actionable as implying the developer had committed the actual crime of blackmail, finding that "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole."  *Id.* at 13–14; *see also Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062 (1977) (finding term "fascist" subject to a variety of interpretations and cannot be regarded as a statement of fact).  There is an even less direct connection between the meaning Plaintiff ascribes to "paid Russian propaganda" (implying Russian financing of OAN as a whole and

1   treasonous activity) and the meanings alleged to be defamatory in *Letter Carriers* and

2   *Bresler* (the independently loaded terms "traitor" and "blackmail").  Ms. Maddow's

3   statement—that, because of its employment of Mr. Rouz, OAN "really literally is paid

4   Russian propaganda"—is thus not susceptible of being proven true or false.

5          Ms. Maddow was, quite clearly, offering up her own unique expression of her

6   views to capture what she viewed as the "ridiculous" nature of the undisputed facts:

7   that a U.S. news network is employing a reporter who is also being paid by the

8   Russian-controlled Sputnik in the midst of a raging debate about Russian election

9   interference.  She presented reporting from *The Daily Beast*, commented in a colorful

10  way while repeatedly disclosing the facts, and allowed her viewers to draw their own

11  conclusions.  Her comment, therefore, is a quintessential statement "of rhetorical

12  hyperbole, incapable of being proved true or false."  *Yagman*, 55 F.3d at 1440; *see*

13  *Knievel*, 393 F.3d at 1078 (assessing "meaning of the word [pimp] in the context in

14  which it was used" and finding where it "cannot reasonably be interpreted literally in

15  this context, the fact that its literal interpretation could be proven true or false is

16  immaterial").  Plaintiff cannot hold Defendants liable for the expression of this

17  opinion.

18          **2.      Ms. Maddow's Comment Does Not Have the Defamatory Meaning—**
19                  **That OAN Is Financed by Russia and Thus Guilty of Treason—That**
20                  **Plaintiff Advances.**

21         Plaintiff's claim also fails because Ms. Maddow's hyperbolic comment, when

22  viewed in context, is not susceptible to "the defamatory meaning [plaintiff] ascribes to

23  it."  *Norse,* 991 F.2d at 567.  This too is a question of law.  *Dodds*, 145 F.3d at 1065.

24         Plaintiff alleges Ms. Maddow's statement that "[OAN] really literally is paid

25  Russian propaganda" is defamatory because "OAN is not paid by the Russian

26  government, none of OAN's content comes from the Russian government, and OAN is

27  not owned or controlled by Russia."  Compl. ¶ 48.  Plaintiff also alleges the statement

28  implied that "OAN is paid by the Russian government for running content prepared for

or at the direction of the Russian government; and/or . . . Rouz is paid by the Russian government for preparing content for OAN for or at the direction of the Russian government." *Id.* ¶ 49.  Plaintiff further alleges the statement is *per se* defamatory because it "amounts to a charge of treason and disloyalty to the United States of America." *Id.* ¶ 52.

In assessing whether a statement is fairly susceptible of a particular defamatory meaning, the court's determination should be made "from the standpoint of the average reader, . . . judging the statement not in isolation, but within the context in which it is made." *Norse*, 991 F.2d at 567 (citation omitted); *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 389 (2004) ("[C]ourts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication is directed." (citation omitted)).

The nature and the context of the comment, as demonstrated by the transcript and the video of the broadcast, preclude Plaintiff's ascribed defamatory meaning.  As discussed above, Ms. Maddow makes clear in the sentences immediately prior to the challenged passage and *in her very next sentence*, which Plaintiff does not quote, that she is commenting about the fact (as reported by *The Daily Beast*) that OAN employs a reporter who also works for Sputnik News.  *See* Compl., Ex. A at 4 ("[OAN's] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government.").  Indeed, at least four times in the segment she says *that* is the story—*i.e.*, OAN's employment of a reporter who is also paid by Sputnik.  An average viewer would have heard "paid Russian propaganda" as nothing more than a colorful and dramatic way of saying the same thing one more time.  "[N]o reasonable reader could understand the sentence, when read in context," to mean Russia owned or funded OAN and that OAN was therefore a traitor guilty of treason, as Plaintiff alleges. *Norse*, 991 F.2d at 567; *see Milkovich*, 497 U.S. at 21 (use of "loose, figurative, or hyperbolic language [will] negate the impression" a speaker is conveying facts).

Other cases have come to similar conclusions when determining whether allegedly actionable statements are susceptible of a defamatory meaning.  In *Troy Group, Inc. v. Tilson*, for example, the court granted an anti-SLAPP special motion to strike after finding that the word "crooks" in the context of the statement "[a]re these guys the biggest crooks on the planet or what?" was "clearly not susceptible of any defamatory meaning" "given its phrasing and context," particularly where the rest of the communication was replete with "colloquial, exaggerated and non-literal language."  364 F. Supp. 2d 1149, 1151, 1156–57 (2005) (noting "context can dull the literal meaning of even the most volatile language" and finding "context similarly dulls the meaning of 'crook'").  And in *Knievel*, the Ninth Circuit rejected as a matter of law the claim that "pimp" was defamatory, finding that "[a]lthough the word 'pimp' may be reasonably capable of a defamatory meaning when read in isolation . . . the term loses its meaning when considered in the context presented here."  393 F.3d at 1074 (internal quotation marks omitted) (further stating that use of "the term 'pimp' . . . was not intended as a criminal accusation, nor was it reasonably susceptible to such a literal interpretation"); *see also Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1236 (N. D. Cal. 2014) (public comments implying that a company may have violated the Federal Corrupt Practices Act were not susceptible of being defamatory because they required "a significant inferential leap to conclude that [defendant's] general uncertainty about the questionable business methods . . . equates to an assertion that [plaintiff] violated the FCPA").

As in *Troy Group*, *Knievel*, and *Wynn*, the allegedly actionable statement here is not susceptible of a defamatory meaning given its context, rhetorical nature, and the inferential leaps required to reach the meanings Plaintiff ascribes to it.  Therefore, Plaintiff cannot establish a probability of prevailing on its claim for this additional reason.

### 3.     Even If It Were Not Opinion, Ms. Maddow's Comment is Non-Actionable Because Plaintiff Confirms It Is Substantially True.

In the alternative, even if Ms. Maddow's "paid Russia propaganda" comment could be deemed fact and not opinion, Plaintiff's claim also fails because the Complaint itself demonstrates that her comment is substantially true.  "California law permits the defense of substantial truth and would absolve a defendant even if she cannot 'justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details.'"  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516–17 (1991) (quoting 5 B. Witkin, Summary of California Law § 495 (9th ed. 1988)).  The burden is on Plaintiff to prove the statement's falsity.  *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986).

As discussed above, Plaintiff cannot meet this burden because Ms. Maddow's statement is an opinion not capable of being proven false.  But even if the comment were treated as a fact, it is not actionable because it is substantially true.  *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1021 (2005) ("The plaintiff cannot be said to have carried this burden [of establishing falsity] so long as the statement appears *substantially* true.").  As the Supreme Court has confirmed, "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'"  *Masson*, 501 U.S. at 517 (quoting *Heuer v. Kee*, 15 Cal. App. 2d 710, 714 (1936)).

In *Campanelli v. Regents of University of California*, the court dismissed without leave to amend the plaintiff basketball coach's complaint where his "own allegations, coupled with assertions of fact which he attached to his complaint and incorporated therein" showed his verbal abuse of basketball players and therefore "admitted the essential accuracy of [defendant's] statement that the players were 'in trouble psychologically.'"  44 Cal. App. 4th 572, 581–82 (1996).  Here, too, Plaintiff's own allegations concede the substantial truth of Ms. Maddow's comment—

specifically, the Complaint and the documents attached thereto admit that Mr. Rouz is both employed by OAN and is paid by a government-funded Russian news organization. *See* Compl. ¶¶ 23–24, Ex. B at 4. Because of Plaintiff's own admissions, there is no actionable daylight between Ms. Maddow's statement and what Plaintiff admits to be true. *See Vogel*, 127 Cal. App. 4th at 1021 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." (internal quotation marks and citation omitted)).

Because Ms. Maddow's comment is substantially true even if viewed as fact, Plaintiff's claim must be struck. *Id.* at 1010, 1024, 1026 (holding that defamation claim should be struck under anti-SLAPP statute where statement was substantially true, among other reasons).

## V.    CONCLUSION

Plaintiff cannot state a claim for defamation against Defendants as a matter of law. Accordingly, the Court should strike Plaintiff's Complaint with prejudice, and award attorneys' fees and costs to Defendants pursuant to California's anti-SLAPP law's mandatory attorneys' fees clause for prevailing defendants.

DATED: October 21, 2019

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ *Theodore J. Boutrous Jr.*
        Theodore J. Boutrous Jr.

Attorneys for Defendants