THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
NATHANIEL L. BACH, SBN 246518
  nbach@gibsondunn.com
MARISSA B. MOSHELL, SBN 319734
  mmoshell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

SCOTT A. EDELMAN, SBN 116927
  sedelman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2029 Century Park East, Suite 4000
Los Angeles, CA 90067-3026
Telephone:  310.552.8500
Facsimile:   310.551.8741

Attorneys for Defendants Rachel Maddow,
MSNBC Cable L.L.C., NBCUniversal Media,
LLC, and Comcast Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., <br><br>Plaintiff, <br><br>v. <br><br>RACHEL MADDOW; COMCAST CORPORATION; NBCUNIVERSAL MEDIA, LLC; and MSNBC CABLE L.L.C., <br><br>Defendants. | CASE NO. 19-cv-1713-BAS-AHG <br><br>**REPLY IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT (CAL. CIV. PROC. CODE § 425.16)** <br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY COURT** <br><br>Action Filed:  September 9, 2019 <br><br>Judge:  Hon. Cynthia Bashant <br><br>Courtroom 4B <br><br>Hearing Date:  December 16, 2019 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. ARGUMENT.........................................................................................................1

    A. Plaintiff's Evidentiary Submissions are Improper and Irrelevant. ............1

    B. Courts Routinely Dismiss Defamation Claims as a Matter of Law Where, as Here, They Fail to State a Claim..............................................2

    C. Plaintiff Fails to Carry Its Burden to Establish a Probability of Prevailing on its Claim..............................................................................3

        1. Ms. Maddow's Statement is Fully Protected Opinion.....................4

            a. Ms. Maddow's Statement of Opinion Was Based on Fully Disclosed Facts. ............................................................4

            b. Ms. Maddow's Statement Does Not Imply an Assertion of Objective Facts. ..................................................6

                (i) Plaintiff Ignores the Statement's Context. ..................6

                (ii) Plaintiff Places Undue Emphasis on "Literally."................................................................7

                (iii) Ms. Maddow's Statement is Not Sufficiently Factual to be Susceptible of Being Proved True or False..............................................................8

        2. An Average Viewer Would Not Find Ms. Maddow's Opinion to Have the Defamatory Meaning Plaintiff Ascribes to It. ...................................................................................................9

        3. Even if Factual, Ms. Maddow's Statement is Substantially True. ...............................................................................................10

III. CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agricola ABC, S.A. De C.V. v. Chiquita Fresh North America, LLC*,
   No. 10-cv-772, 2011 WL 13100714 (S.D. Cal. Mar. 8, 2011) .................................. 1

*Campanelli v. Regents of Univ. of Cal.*,
   44 Cal. App. 4th 572 (1996) ................................................................................ 3, 10

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp. 2d 1113 (C.D. Cal. 1998) .................................................................. 2, 5

*Dodds v. Am. Broad. Co., Inc.*,
   145 F.3d 1053 (9th Cir. 1998) ................................................................................... 4

*Dworkin v. Hustler Magazine, Inc.*,
   668 F. Supp. 1408 (C.D. Cal. 1987) ......................................................................... 2

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ................................................................................... 8

*Greenbelt Cooperative Publishing Association v. Bresler*,
   398 U.S. 6 (1970) .................................................................................................. 3, 8

*HMS Capital, Inc. v. Lawyers Title Co.*,
   118 Cal. App. 4th 204 (2004) .................................................................................... 2

*Info. Control Grp. v. Genesis One Comput. Corp.*,
   611 F.2d 781 (9th Cir. 1980) ................................................................................ 6, 7

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................... 2, 9

*Koch v. Goldway*,
   817 F.2d 507 (9th Cir. 1987) ............................................................................ 6, 7, 9

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ..................................................................................... 4

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ................................................................................................. 10

*Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*,
   418 U.S. 264 (1974) .................................................................................................. 8

*Norse v. Henry Holt & Co.*,
   991 F.2d 563 (9th Cir. 1993) ..................................................................................... 9

*O'Connor v. McGraw-Hill, Inc.*,
   159 Cal. App. 3d 478 (1984) ..................................................................................... 3

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .................................................................................. 1, 2

*Troy Group, Inc. v. Tilson*,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) ...................................................................... 9

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) .................................................................................... 7

*Unsworth v. Musk*,
    No. 2:18-cv-08048, 2019 WL 4543110 (C.D. Cal. May 10, 2019) ....................... 6, 9

*Vogel v. Felice*,
    127 Cal. App. 4th 1006 (2005) ................................................................................ 10

*Weller v. American Broadcasting Companies, Inc.*,
    232 Cal. App. 3d 991 (1991) ...................................................................................... 2

*Wynn v. Chanos*,
    685 Fed. App'x 578 (9th Cir. 2017) ........................................................................... 2

**Other Authorities**

*Literally,* Merriam-Webster Online Dictionary, https://www.merriam-
    webster.com/dictionary/literally ................................................................................. 8

## I. INTRODUCTION

Plaintiff's Opposition cites irrelevant evidence, mischaracterizes the legal standards on which Defendants' Motion rests, and ignores the actual context of Ms. Maddow's statement. Without the law or facts on its side, Plaintiff invokes a "send it to the jury" mantra and erects a straw man of distorted meaning it can knock down. But no case permits Plaintiff to ignore all context surrounding an observation based on disclosed facts, particularly in the midst of colorful commentary and where the adjacent sentences make clear the speaker's meaning. Consistent with Ninth Circuit and California precedent, the pleadings and publication in this case demonstrate that the statement at issue is pure opinion as a matter of law. This is not a close case, and Plaintiff's claim must be struck under California's anti-SLAPP law.

## II. ARGUMENT

### A. Plaintiff's Evidentiary Submissions are Improper and Irrelevant.

Plaintiff's effort to rescue its claims by submitting three declarations, including a linguist's irrelevant expert report, is futile. Just last year, in *Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, the Ninth Circuit confirmed that evidentiary submissions are inappropriate where, as here, "defendant[s] make[] a special motion to strike based on alleged deficiencies in the plaintiff's complaint. . . ." 890 F.3d 828, 834 (9th Cir. 2018) (in such instances, "the motion must be treated in the same manner as a motion under Rule 12(b)(6)"); *see also Agricola ABC, S.A. De C.V. v. Chiquita Fresh North America, LLC*, No. 10-cv-772, 2011 WL 13100714, at *3 (S.D. Cal. Mar. 8, 2011) ("On [a] motion to dismiss under Rule 12(b)(6), the Court cannot properly consider" declarations that "offer fact-based opinions"). Plaintiff's request for discovery fails for the same reason. *Planned Parenthood*, 890 F.3d at 833–34 (discovery only warranted where anti-SLAPP motion is brought under summary judgment standard). Plaintiff's evidentiary submissions therefore amount to much wasted breath and are no substitute for its claim's lack of merit.

Plaintiff asserts its linguist's report "is admissible in defamation cases," citing

*Weller v. American Broadcasting Companies, Inc.*, 232 Cal. App. 3d 991 (1991). Opp. at 14. But *Weller* is inapt: the issue here is whether an expert report attached to a brief should be considered under Rule 12(b)(6), not, as in *Weller*, whether expert testimony was properly admitted at trial. *Id.* at 1007–09. Plaintiff also cites *HMS Capital, Inc. v. Lawyers Title Co.*, claiming that the court must review and "accept as true evidence favorable to the plaintiff." 118 Cal. App. 4th 204, 212 (2004). But *HMS Capital* is a California state court case, and the Ninth Circuit has repeatedly confirmed that federal procedural rules apply to anti-SLAPP motions brought in diversity under the *Erie* doctrine, which Plaintiff entirely ignores. *See, e.g.*, *Planned Parenthood*, 890 F.3d at 834–35.

While Plaintiff's submissions are procedurally improper, none would change this Motion's outcome. No magazine article, academic analysis, or comparative use of the word "literally" alters the actual, relevant context of Ms. Maddow's statement.

**B.  Courts Routinely Dismiss Defamation Claims as a Matter of Law Where, as Here, They Fail to State a Claim.**

Plaintiff tells the Court it is powerless to act as a gatekeeper and must send its claim to the jury. But courts may and frequently do dismiss defamation plaintiffs' efforts to invent "factual disputes" about nonactionable language. Indeed, it is well-established that "[i]t is for the court to decide the [fact-opinion dichotomy] in the first instance *as a matter of law*." *Dworkin v. Hustler Magazine, Inc.*, 668 F. Supp. 1408, 1415 (C.D. Cal. 1987) (emphasis added); *see also Knievel v. ESPN*, 393 F.3d 1068, 1073–76 (9th Cir. 2005) (affirming Rule 12(b)(6) dismissal of libel claim and holding, *as a matter of law*, the word "pimp" was not defamatory in context); *Wynn v. Chanos*, 685 Fed. App'x 578, 579 (9th Cir. 2017) (affirming grant of anti-SLAPP motion and dismissal of a complaint because "*as a matter of law*, it did not meet the factual-assertion standard" (emphasis added)); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1124–26 (C.D. Cal. 1998) (holding statement was opinion *as a matter of law* and dismissing claim on pleadings because statement was based on disclosed facts).

1    Plaintiff cites cases for the uncontroversial principle that where a statement is
2 ambiguous, the trier of fact should determine whether it is susceptible of a factual
3 interpretation. *See* Opp. at 7. But those cases were either factually distinct, *see*
4 *O'Connor v. McGraw-Hill, Inc.*, 159 Cal. App. 3d 478, 483–84 (1984) (finding
5 understanding of comments regarding a business negotiation a question of fact because
6 they "were not made in a setting in which the audience might necessarily consider the
7 statements simply as an opinion" such as in context of a "public controversy, [or] a
8 political or public debate"), or were not even cases where a court allowed the claim to
9 proceed past the pleadings, *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572,
10 580 (1996) (finding that "[a]s a matter of law, no 'reasonable fact finder could conclude
11 that the published statements imply a provably false factual assertion'"). Indeed,
12 *Campanelli* confirmed that "[w]here, as here, the comments are made in the arena of
13 public debate and controversy, a reviewing court has an obligation to examine the whole
14 record in order to ensure there is no infringement of the First Amendment guarantee of
15 free expression." *Id.* at 578.

    Here, there is no ambiguity about how a reasonable viewer would have interpreted
Ms. Maddow's statement because she explicitly and repeatedly laid out the facts forming
the basis of her rhetorical comments, and the context of her statement confirms it is pure
opinion. It is therefore akin to cases like *Greenbelt Cooperative Publishing Association
v. Bresler*, 398 U.S. 6 (1970) (holding the term "blackmail" to be opinion because the
publisher described the full background upon which the statement was made). Moreover,
Plaintiff has conceded that Ms. Maddow's speech is on a public issue, thereby granting it
wide protection. *See* Opp. at 5–6 n.1.

**C.  Plaintiff Fails to Carry Its Burden to Establish a Probability of Prevailing on its Claim.**

    After conceding the first prong of the anti-SLAPP test, Plaintiff misconstrues the
second prong by attempting to place *its own* burden to establish a probability of
prevailing on its claim onto Defendants. *Compare* Opp. at 1 (erroneously asserting that

"Defendants' burden is a high one"), *with Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (confirming the burden shifts *to the plaintiff* at the second prong of the anti-SLAPP analysis "to establish a reasonable probability that it will prevail on its claim"). The burden is Plaintiff's and it has failed to carry it.[1]

### 1. Ms. Maddow's Statement is Fully Protected Opinion.

#### a. Ms. Maddow's Statement of Opinion Was Based on Fully Disclosed Facts.

Opinions are protected speech if they are based on disclosed facts that are themselves not actionable. *See Dodds v. Am. Broad. Co., Inc.*, 145 F.3d 1053, 1067 (9th Cir. 1998). Plaintiff does not dispute that Ms. Maddow repeatedly cited *The Daily Beast* article as the sole source of her statements about Sputnik, Kristian Rouz, and OAN. Nor does Plaintiff allege that the facts of *The Daily Beast* article are false and defamatory. *See, e.g.*, Opp. at 4 (describing article); Opp. at 17 (noting she "used true facts" from the article). Instead, Plaintiff argues that Ms. Maddow *implied* that she had knowledge of *undisclosed* facts beyond *The Daily Beast* article. But Plaintiff cites *no portion* of the segment's transcript in which Ms. Maddow implies she has undisclosed information—not a single word or phrase. Plaintiff therefore adopts a tautology, arguing that "[b]ecause Defendants' opinion argument fails, so does their argument that Maddow's statement was protected based on disclosed facts." Opp. at 15.

The video and transcript of Ms. Maddow's segment demonstrate how closely she tied her opinion to its source. Ms. Maddow introduces her segment by showing a snapshot of *The Daily Beast* article, which clearly states that it was written by Kevin Poulsen and published that same day, July 22, 2019. Even as Ms. Maddow is making her statement that OAN "really literally is paid Russian propaganda," the picture and text call-out of *The Daily Beast* article are still up on the screen:

---

[1] Plaintiff summarily decides Defendants "do not contest (and thus concede for purposes of their motion) the remaining elements" of Plaintiff's defamation claim. Opp. at 6 n.2. Defendants do not concede anything—they have simply not moved on those bases.



Not. of Lodging, Ex. 1, at 2:45-3:00.  This graphic evidences that Ms. Maddow does not have any independent knowledge of undisclosed facts.  Furthermore, she emphasizes, often in colorful terms, that she is summarizing what "we learned today" from *The Daily Beast*, calling the reporting "the single most perfectly formed news story of the day," a "sparkly . . . scoop," and a "giblet[] the news gods dropped off their plates for us to eat off the floor. . . ."  Compl., Ex. A at 3.  All these turns of phrase underscore that the sole basis of Ms. Maddow's commentary is *The Daily Beast* article.

Plaintiff's effort to distinguish *Cochran v. NYP Holdings* fails.  There, Johnnie Cochran brought a libel action against a newspaper for writing that "history reveals that [Cochran] will say or do just about anything to win, typically at the expense of the truth. . . ."  58 F. Supp. 2d at 1115, *aff'd and adopted*, 210 F.3d 1036 (9th Cir. 2000).  The court granted the paper's motion to dismiss, in part because the writer "d[id] not even hint that her opinion [was] based on any additional, undisclosed facts not known to the public."  *Id.* at 1122.  So too here.  Ms. Maddow does not "even hint" that her opinion was based on any additional, undisclosed facts—and, of course, Plaintiff cites nothing else in her segment to so establish.  Indeed, she said "we" learned this information today, via *The Daily Beast* article, further confirming that she is reading and commenting on the same article that is available to her viewership, and is not implying that she personally has additional, independent knowledge.  Compl., Ex. A at 4.

### b. Ms. Maddow's Statement Does Not Imply an Assertion of Objective Facts.

#### (i) Plaintiff Ignores the Statement's Context.

Plaintiff goes to great lengths to discuss *anything but* the actual context of Ms. Maddow's statement, the most important factor of the totality of circumstances test. *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987) ("Context [] resolve[s] the matter. Context can be determinative that a statement is opinion and not fact. . . ."). Even Plaintiff's cases confirm as much. *See, e.g.*, *Unsworth v. Musk*, No. 2:18-cv-08048, 2019 WL 4543110, at *4 (C.D. Cal. May 10, 2019) ("context is important"). Indeed, the reason context is critical is to prevent the distortion Plaintiff attempts here— pulling a statement entirely from its explanatory and rhetorical context. *See Info. Control Grp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980) (confirming a "court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and [its] audience").

Plaintiff fails to cite, even once, the sentences surrounding what it claims is the actionable phrase. These adjacent sentences confirm that in her statement "paid Russian propaganda" she is characterizing the relationship between Mr. Rouz and OAN:

> We literally learned today that that outlet the president is promoting shares staff with the Kremlin. . . . In this case, the most obsequiously pro-Trump right wing news outlet in America really literally is paid Russian propaganda. *The[ir] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government.*

Compl., Ex. A at 4 (emphasis added).

Plaintiff's failure to cite these surrounding statements is emblematic of its Opposition as a whole, which tries to divert the Court's attention to anything other than the actual context of Ms. Maddow's words. First, Plaintiff refers to Ms. Maddow's education, claiming she "is not the sort of person an audience would expect to misuse 'literally'" because "[s]he is a graduate of Stanford and Oxford Universities and a Rhodes Scholar." Opp. at 9–10. Next, Plaintiff looks to four other *The Rachel Maddow Show* segments, all aired months after the statement at issue was made, where Ms. Maddow

used the word "literally" in other contexts, and also cites an October 2019 *New York Times Magazine* feature in which Ms. Maddow made the unremarkable assertion that her show reports "useful information" and "true stories."[2] Dkt. 19-11 at 7–8. But none of these stray arguments (or improperly submitted evidence) has any bearing on what a reasonable viewer would have seen and heard when watching her July 22, 2019 show.

Relying on *Unelko Corp. v. Rooney*, 912 F.2d 1049 (9th Cir. 1990), Plaintiff asserts that the humorous or satirical nature of a show "'does not negate the impression that [the speaker] was making a factual assertion. . . .'" Opp. at 10–11. But *Unelko* confirmed the importance of examining a statement "in its totality in the context in which it was uttered or published." 912 F.2d at 1054 (internal quotations omitted). There, Andy Rooney stated that he had tried the Rain-X product, but "[i]t didn't work." *Id.* Notably, that was the very last thing Rooney said about Rain-X before switching subjects. Here, Ms. Maddow explains in the segment and in her *very next sentence* precisely what she meant—that OAN employs Mr. Rouz, who is paid to create content for a Russian propaganda organization.

Plaintiff attempts but fails to distinguish *Koch v. Goldway*, 817 F.2d 507 (9th Cir. 1987), arguing that Ms. Maddow's statement does not arise from a political debate, as it did there. But Plaintiff does not explain how the statement that a political rival was a "Nazi war criminal" qualifies as opinion because it was in a "heated political debate," *id.* at 508–09, whereas Ms. Maddow's comments—made on cable news and during a period of heated discussions about United States elections—do not.

### (ii) Plaintiff Places Undue Emphasis on "Literally."

In looking at an allegedly defamatory statement, "court[s] must consider all the words used, *not merely a particular phrase or sentence*." *Info. Control Corp.*, 611 F.2d at 784. Plaintiff does the opposite, homing in on the phrase "really literally paid Russian propaganda" to the exclusion of its surrounding sentences, and then placing undue weight

---

[2] The article noted that *The Rachel Maddow Show* "pioneered a more jocular, cerebral approach *to opinionating*." Dkt. 19-11 at 6 (emphasis added).

on the term "literally." But without any other source of information about the connection between OAN and Mr. Rouz—and Ms. Maddow's segment makes plain that she has none—it is the figurative definition of "literally" that any reasonable viewer would have heard. *Literally*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/literally ("in effect: VIRTUALLY—used in an exaggerated way to emphasize a statement or description that is not literally true or possible.").

Plaintiff then broadly states that the "Ninth Circuit . . . rejected the use of disputed dictionary definitions to escape a defamation suit." Opp. at 9. But the Ninth Circuit never pronounced such a blanket rule. In *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002), the parties argued over the definition of the verb "doctored," which had two different dictionary definitions. The Ninth Circuit stated that *in that circumstance* it "doubt[ed] . . . that anyone would understand the statement in th[e] [non-defamatory] sense. . . ." *Id.* at 1128. In *Flowers*, the entire dispute was over the defamatory meaning of the "doctored," whereas here, the phrase "really literally" is a figurative modifier for the actual allegedly defamatory words ("paid Russian propaganda"). Here, Ms. Maddow's statement can *only* be reasonably understood in the figurative sense, given the context and numerous explanatory phrases surrounding it.

### (iii) Ms. Maddow's Statement is Not Sufficiently Factual to be Susceptible of Being Proved True or False.

Plaintiff asserts that Ms. Maddow's statement is not opinion because Plaintiff's reformulation of what she actually said is capable of being proven true or false: "either OAN is paid by Russia for favorable coverage, or it isn't." Opp. at 8. But even apart from Plaintiff's mischaracterization of Ms. Maddow's statement, Plaintiff's premise is contrary to decades of precedent. Courts routinely focus on the context, sourcing and disclosure, and other circumstances of a statement to hold that words theoretically capable of being proven false are not defamatory as a matter of law, including, for example, the terms "traitor," "blackmail," "pimp," "crooks," and "Nazi war criminal." *Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 284 (1974); *Bresler*, 398

U.S. at 7–8; *Knievel*, 393 F.3d at 1078; *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1151 (C.D. Cal. 2005); *Koch*, 817 F.2d at 508–10. Each of these labels, standing in isolation, may be capable of being proven true or false, but in each circumstance, the court correctly held that, in context, they were not assertions of fact.

Plaintiff cites *Unsworth v. Musk*, claiming it shows how "Maddow's statement could reasonably be construed as a factual assertion." Opp. at 8. But unlike here, Musk's comments—tweets in which he "bet" a "signed dollar" plaintiff was a "pedo guy"—were not made on the basis of fully disclosed facts that the plaintiff did not challenge as defamatory. *Unsworth*, 2019 WL 4543110, at *7. And just four days after Plaintiff filed its Opposition, the jury rejected Unsworth's claim, finding Musk's words not defamatory.

### 2. An Average Viewer Would Not Find Ms. Maddow's Opinion to Have the Defamatory Meaning Plaintiff Ascribes to It.

When interpreted from the "standpoint of the average [viewer]," Plaintiff cannot demonstrate that Ms. Maddow's statement is "capable of the defamatory meaning [Plaintiff] ascribes to it." *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993). Plaintiff alleges Ms. Maddow's statement that OAN "really literally is paid Russian propaganda" is defamatory because OAN is not paid and controlled by the Russian government. *See* Compl. ¶ 48. But as a matter of law, a reasonable viewer would not believe this is what Ms. Maddow meant—indeed, she did not say that. Plaintiff then undermines its argument further by putting more words in Ms. Maddow's mouth, claiming that Ms. Maddow's statement amounts to a charge of "treason" and "disloyalty" to the United States, Compl. ¶ 52, and that she has effectively implied that "OAN is 'paid' by Russia for favorable content," Opp. at 18.

When determining if a statement is reasonably capable of sustaining defamatory meaning, the statement is viewed "'not in isolation, but within the context in which it is made.'" *Knievel*, 393 F.3d at 1074 (quoting *Norse*, 991 F.2d at 567). But while every case Plaintiff cites addresses context of the relevant statement, Plaintiff does not devote a single sentence to the context of Ms. Maddow's statement. Its argument fails for this

reason alone.  Instead, Plaintiff states, without support, that Defendants must confirm that their characterization of Ms. Maddow's statement "is the *only* reasonable one."  Opp. at 7.  That is an incorrect statement of the law and turns Plaintiff's burden on its head.  The context is what makes Plaintiff's ascribed meanings unreasonable, and Ms. Maddow's statements are not susceptible of those meanings as a matter of law, which is for the Court to decide (not a jury or a linguistics professor).  *See, supra*, Section II.B.

### 3. Even if Factual, Ms. Maddow's Statement is Substantially True.

Even if Ms. Maddow's statement could be considered factual, a statement is not defamatory if "the substance of the charge [is] proved true. . . ."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991).  Plaintiff first argues that this is a factual determination not ripe at this stage, yet *Campanelli*, which Plaintiff labors to distinguish, is squarely on point; the court dismissed plaintiff's defamation claims on the pleadings in part because plaintiff "admitted the essential accuracy of [defendant's] statement" and therefore it was substantially true.  44 Cal. App. 4th at 582.  Plaintiff counters by asserting that Ms. Maddow's statement is "wholly false," Opp. at 19, and that Plaintiff has not admitted the essential accuracy of her statement, only that "unbeknownst to it, Rouz wrote articles for Sputnik News," Opp. at 20.  But that conceded fact is what Ms. Maddow is commenting on—the irony that in the midst of a debate about Russian influence in American politics, OAN employs a Kremlin-paid journalist who has written over one thousand articles for Sputnik.  That undisputed fact makes Ms. Maddow's statement substantially true, and therefore not actionable, full stop.  *See Vogel v. Felice*, 127 Cal. App. 4th 1006, 2021 (2005) ("The plaintiff cannot be said to have carried this burden [of establishing falsity on anti-SLAPP motion] so long as the statement appears *substantially* true." (emphasis in original)).

### III.   CONCLUSION

Plaintiff has failed to meet its burden to establish a reasonable probability of prevailing on its claim as a matter of law.  As such, the Court should strike Plaintiff's Complaint with prejudice, and award attorneys' fees and costs to Defendants.

| | | |
|---|---|---|
| 1 | DATED:  December 9, 2019 | Respectfully Submitted, |
| 2 | | |
| 3 | | GIBSON, DUNN & CRUTCHER LLP |
| 4 | | |
| 5 | | By:  /s/ *Theodore J. Boutrous Jr.* |
| 6 | | Theodore J. Boutrous Jr. |
| 7 | | Attorneys for Defendants |