**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HERRING NETWORKS, INC., <br><br>     Plaintiff, <br><br> v. <br><br> RACHEL MADDOW, *et al.*, <br><br>     Defendants. | Case No. 19-cv-1713-BAS-AHG <br><br> **ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE** <br><br> **[ECF No. 18]** |

Plaintiff Herring Networks, Inc. filed a complaint for defamation against Rachel Maddow; Comcast Corporation; NBCUniversal Media, LLC; and MSNBC Cable LLC. (ECF No. 1.) The claim stems from a statement Rachel Maddow made on *The Rachel Maddow Show* on MSNBC. Soon after Plaintiff filed suit, Defendants filed a special motion to strike pursuant to California Code of Civil Procedure § 425.16, commonly known as the Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") law. ("Mot.," ECF No. 18.) The Court held oral argument on the Motion on May 19, 2020. For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Strike.

## I. Background

Plaintiff Herring Networks, Inc. owns and operates One America News Network ("OAN"). ("Compl.," ECF No. 1, ¶ 1.) On July 22, 2019, reporter Kevin Poulsen at *The Daily Beast* published a story called "Trump's New Favorite Channel Employs Kremlin-Paid Journalist." Poulsen reported that Kristian Rouz, one of the reporters at OAN, was "on the payroll of the Kremlin's official propaganda outlet, Sputnik." ("RJN Ex. A," ECF No. 18-3 (hereinafter, "*Daily Beast* article").)[1] In short, Poulsen reported that Rouz has been reporting on U.S. politics for OAN since August 2017, and "[f]or all of that time, he's been simultaneously writing for Sputnik, a Kremlin-owned news wire that played a role in Russia's 2016 election-interference operation, according to an assessment by the U.S. intelligence community." (*Id.*) Poulsen opined that "Kremlin propaganda sometimes sneaks into Rouz's segments on unrelated matters" and provided examples. (*Id.*) Poulsen also quoted former FBI agent Clint Watts, who stated: "This completes the merger between Russian state-sponsored propaganda and American conservative media . . . We used to think of it as 'They just have the same views' or 'They use the same story leads.' But now they have the same personnel." (*Id.*)

Later that day, Rachel Maddow discussed the *Daily Beast* article on her talk show, *The Rachel Maddow Show*, which airs on MSNBC. The segment was titled: "Staffer on Trump-favored network is on propaganda Kremlin payroll." *The Rachel Maddow Show: Staffer on Trump-Favored Network Is on Propaganda Kremlin Payroll* (MSNBC television broadcast July 22, 2019), available at https://www.msnbc.com/rachelmaddow/watch/staffer-on-trump-favored-network-is-on-propaganda-kremlin-payroll-64332869743). Maddow opened the segment by informing viewers about OAN, calling it a "boutique little news outlet that is designed specifically for Trump-mega fans." She pointed out that President Trump

---

[1] The Court discusses Defendants' request for judicial notice and the documents provided by Plaintiff *infra* at Section III.A.

– 2 –

previously praised OAN's ratings on Twitter and gave OAN a press pass to the White House. Maddow then stated that she has the "most perfectly formed story of the day" and presented Kevin Poulsen's *Daily Beast* article. She stated the article reports that OAN, which is "Trump's favorite, more Trump-ier than Fox TV network[,] . . . has a full-time on-air reporter who covers U.S. politics, who is also simultaneously on the payroll of the Kremlin." The reporter is being paid to produce "pro-Putin propaganda" for the Russian-funded network Sputnik. Maddow states, "there is a lot of news today, but among the giblets the news gods dropped off their plates for us to eat off the floor today, is the actual news that this super right-wing news outlet that the President has repeatedly endorsed . . . we literally learned today that that outlet the President is promoting shares staff with the Kremlin. I mean, what?" She laughs and soon after says, "in this case, the most obsequiously pro-Trump right wing news outlet in America <u>really literally is paid Russian propaganda</u>. Their on-air U.S. politics reporter is paid by the Russian government to produce propaganda for that government." (emphasis added). The underlined portion of the sentence highlights where Plaintiff takes issue. Plaintiff sued for defamation. Soon afterwards, Defendants filed the present Motion.

**II.   Legal Standard**

California's anti-SLAPP statute is intended to "provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055–56 (2006). The anti-SLAPP law provides in relevant part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

Courts apply a two-step process to determine whether an action is subject to an anti-SLAPP special motion to strike. *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002). First, the defendant must establish that "the challenged cause of action is one arising from protected activity." *Id*. Once the defendant makes a threshold showing that the act in question is protected, the burden shifts to the plaintiff, who must establish "a probability of prevailing on the claim." *Id*.

### III.   Analysis

#### A.   **Procedural Issues**

"For purposes of the Federal Rules of Civil Procedure, a motion brought on anti-SLAPP grounds can either be analogous to a motion to dismiss or a motion for summary judgment." *Clifford v. Trump*, 339 F. Supp. 3d 915, 922 (C.D. Cal. 2018). Here, Defendants' Motion is analogous to a motion to dismiss because Defendants move to strike based on legal arguments. (*See* Mot. at 7.) Defendants are not "providing alternate facts to challenge the allegations" in the complaint, so the motion is not analogous to a motion for summary judgment. *See Clifford*, 339 F. Supp. 3d at 922 (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).)

The issue then becomes what the Court may consider in evaluating the present Motion. For the second prong of the anti-SLAPP test under California law, to show a probability of prevailing on the merits of its claim, a plaintiff "must demonstrate the complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823 (1994). "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Code Civ. Proc. § 425.16(b)(2). The Ninth Circuit has noted there are "conflicts between California's anti-SLAPP law's procedural provisions and the Federal Rules of Civil Procedure." *Planned Parenthood*, 890 F.3d at 833. And "if there is a contest

between a state procedural rule and the federal rules, the federal rules of procedure will prevail." *Id.* at 834. Specifically, when a court considers a motion to strike "based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)." *Id.*

Plaintiff attaches various declarations and exhibits to its opposition brief. (ECF Nos. 19-1 to 19-11.) Plaintiff also moves ex parte to supplement the record with a video of the December 9, 2019 episode of *Hardball* with Chris Matthews that aired on MSNBC. (ECF No. 21.) Because Defendants' Motion is analogous to a motion to dismiss, "the motion must be treated in the same manner as a motion under Rule 12(b)(6)." *Planned Parenthood*, 890 F.3d at 834 (concluding that the district court correctly applied a Rule 12(b)(6) standard to the motion to strike "challenging the legal sufficiency of Plaintiff's complaint" and "did not err in declining to evaluate the factual sufficiency of the complaint at the pleadings stage").[2]

In evaluating a Rule 12(b)(6) motion, the Court considers the complaint as well as "material which is properly submitted as part of the complaint," which means the documents are either "physically attached to the complaint" or the "complaint necessarily relies" on them and their authenticity is not contested. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's

---

[2] At oral argument, Plaintiff argued that Defendants' motion could be converted to a motion for summary judgment and the Court could consider Plaintiff's documents. But in determining whether an anti-SLAPP motion is analogous to a motion to dismiss or motion for summary judgment, the focus is on the defendant's arguments. Here, Defendants chose to bring their anti-SLAPP motion as one analogous to a motion to dismiss. The case law provides no indication that when an anti-SLAPP motion challenges the legal sufficiency of the complaint and does not provide alternative facts, that the plaintiff can then provide more facts and ask that the motion be converted to a motion for summary judgment. *Cf. Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 988 (D. Ariz. 2007) ("Plaintiff does not provide any support for its fundamental assumption that a non-moving party can convert a motion to dismiss into a motion for summary judgment by including extraneous material in its response."). The Court declines to allow Plaintiff to do so.

claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The Court finds it appropriate to incorporate by reference the *Daily Beast* article as well as the relevant segment of *The Rachel Maddow Show*. (ECF Nos. 18-2, 18-3.) Both are referred to extensively in the complaint. The Court declines to consider the declarations and exhibits submitted by Plaintiff (ECF Nos. 19-1 to 19-11) and the *Hardball* video, as this information is not attached to the complaint, relied on by the complaint, or judicially noticeable. Accordingly, the Court **DENIES** Plaintiff's ex parte motion. (ECF No. 21.)

### B. Protected Activity

Defendants have the burden to establish that Maddow's actions alleged in the complaint arise from protected activity.

Section 425.16, subdivision (e) sets forth four categories of protected activity. Subdivision (e)(4) defines protected activity to include "any . . . conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." The "public interest" requirement is construed broadly to include "any issue in which the public is interested." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis omitted). Plaintiff agrees that Maddow was exercising her constitutional right of free speech and her statements concerned a public issue. Thus, Plaintiff does not contest that the first prong of the anti-SLAPP statute is met. ("Opp'n," ECF No. 19, at 5–6 n.1.) The Court agrees and turns to the second prong.

### C. Probability of Prevailing on the Defamation Claim

In this second step, Plaintiff must show a "reasonable probability" of prevailing on the challenged claim. *Metabolife Intern. Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001). Plaintiff is suing for defamation. Under California law, defamation "involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27 (2007). In arguing that Plaintiff cannot

prevail on the merits of its claim, Defendants make two arguments in the alternative: first, Maddow's statement is one of opinion not of fact (i.e., the statement is not defamatory), and second, the statement is substantially true.

### 1. Opinion vs. Fact

The threshold question "in a defamation claim is 'whether a reasonable factfinder could conclude that the contested statement implies an assertion of objective fact.' If the answer is no, the claim is foreclosed by the First Amendment." *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009). This is because "'pure opinion'—that is, statements that do not imply facts capable of being proved true or false" is protected. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n.2 (9th Cir. 1990), *cert. denied*, 499 U.S. 961 (1991).

To determine whether a statement implies a factual assertion, the court must examine the "totality of the circumstances" in which the statement was made. First, the court looks at "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995). Second, the court considers the "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Id.* Finally, the court considers whether the "statement itself is sufficiently factual to be susceptible of being proved true or false." *Id.*

"Whether an allegedly defamatory statement is one of opinion or fact is a question of law." *Gardner*, 563 F.3d at 986; *Dworkin v. Hustler Mag., Inc.*, 668 F.Supp. 1408, 1415 (C.D. Cal. 1987) ("It is for the court to decide [whether a statement is actionable defamation] in the first instance as a matter of law."), *aff'd,* 867 F.2d 1188, 1193–94 (9th Cir. 1989). But "if a statement is 'susceptible of different constructions, one of which is defamatory, resolution of the ambiguity is a question of fact for the jury.'" *Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir.

2002); *see also Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 578 (1996). The Court now turns to the three factors under the totality of the circumstances analysis.

### a. Broad Context

"Context can be determinative that a statement is opinion and not fact, for the context of a statement may control whether words were understood in a defamatory sense." *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987).

The Court first considers the medium in which the statement was made. Maddow made the statement on her talk show segment that aired on MSNBC. "The more statements lack the formality and polish typically found in documents in which a reader would expect to find facts, the more likely the statements are nonactionable opinion." *Unsworth v. Musk*, No. 2:18-CV-08048-SVW-JC, 2019 WL 4543110, at *6 (C.D. Cal. May 10, 2019); *see Partington v. Bugliosi*, 56 F.3d 1147, 1154–55 (9th Cir. 1995) (finding that the general tenor of a "made-for-television movie" or "docudrama" "tends to negate the impression that the statements involved represented a false assertion of objective fact"); *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1123 (C.D. Cal. 1998) *aff'd*, 210 F.3d 1036 (9th Cir. 2000) (noting that the alleged defamatory statement was located in a column in a section of a newspaper that "generally contain[s] opinion columns").

The Court may consider whether the forum is one where a "reader would be likely to recognize" that statements "generally represent the highly subjective opinions of the author rather than assertions of verifiable, objective facts." *Partington*, 56 F.3d at 1154. On one hand, a viewer who watches news channels tunes in for facts and the goings-on of the world. MSNBC indeed produces news, but this point must be juxtaposed with the fact that Maddow made the allegedly defamatory statement on her own talk show news segment where she is invited and encouraged to share her opinions with her viewers. At least according to Plaintiff, viewers who watch MSNBC may know that it carries a "liberal message" and that

Maddow is a "liberal television host" who expresses her views regarding Russia and President Trump. (Compl. ¶¶ 20, 31.) Maddow does not keep her political views a secret, and therefore, audiences could expect her to use subjective language that comports with her political opinions. Thus, Maddow's show is different than a typical news segment where anchors inform viewers about the daily news. The point of Maddow's show is for her to provide the news but also to offer her opinions as to that news. Therefore, the Court finds that the medium of the alleged defamatory statement makes it more likely that a reasonable viewer would not conclude that the contested statement implies an assertion of objective fact.

The Court now turns to the segment as a whole. The "general tenor" of Maddow's segment is a report on the *Daily Beast* article, and Maddow's tone could be described as surprise and glee at the unexpectedness of the story. She begins by calling the story the "single most like sparkly story" in what had been "a more ridiculous than most day in the news." She calls the news one among "the giblets the news gods dropped off their plates for us to eat off the floor today." Maddow reports that OAN shares staff with the Kremlin and discusses the allegedly defamatory Russia connection, then follows this by saying (while laughing), "I mean, what?" She concludes the segment by saying, with a shake of the head, "I mean, this is the kind of news we are supposed to take in stride these days. And we do our best."

A holding by the Ninth Circuit in *Partington* is applicable and worth quoting in full:

> When, as here, an author writing about a controversial occurrence fairly describes the general events involved and offers his personal perspective about some of its ambiguities and disputed facts, his statements should generally be protected by the First Amendment. Otherwise, there would be no room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public. Instead, authors of every sort would be forced to provide only dry, colorless descriptions of facts, bereft of analysis or insight. There

would be little difference between the editorial page and the front page, between commentary and reporting, and the robust debate among people with different viewpoints that is a vital part of our democracy would surely be hampered.

*Partington*, 56 F.3d at 1154. This is true here too; Maddow "fairly describe[d]" the article that formed the basis for her segment, and she added in her colorful commentary and opinions. Viewers expect her to do so, as it is indeed <u>her</u> show, and viewers watch the segment with the understanding that it will contain Maddow's "personal and subjective views" about the news. *See id.* Thus, the Court finds that as a part of the totality of the circumstances, the broad context weighs in favor of a finding that the alleged defamatory statement is Maddow's opinion and exaggeration of the *Daily Beast* article, and that reasonable viewers would not take the statement as factual.

### b.     Specific Context

The Court now considers the specific context. Even where the broad context is one of opinion, it is possible that a particular statement may imply an assertion of objective fact and thus constitute actionable defamation. *Partington*, 56 F.3d at 1155. In analyzing the specific context "and the content of the statements[,]" the Court analyzes "the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Underwager*, 69 F.3d at 366. Where the language used is "loose, figurative, or hyperbolic," this tends to negate the impression that a statement contains an assertion of verifiable fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990). A hyperbole is an exaggeration especially "to an excessive degree" or "a manner of speaking that depicts something as being much bigger, smaller, worse, etc. than it really is." HYPERBOLE, Black's Law Dictionary (11th ed. 2019). Hyperbolic statements are not actionable because the listener knows that he or she should not accept the statements as fact. *See* Eric Scott Fulcher, *Rhetorical Hyperbole and the Reasonable Person Standard: Drawing the Line Between Figurative Expression and Factual*

1  *Defamation*, 38 Ga. L. Rev. 717, 720 (2004) ("The primary rationale behind
2  precluding liability for statements that qualify as rhetorical hyperbole is that the
3  listener or reader knows that the statements are not to be taken literally, and,
4  therefore, such statements do not damage the subject's reputation.").

5      A main issue here is whether Maddow's statement was hyperbolic. Because
6  Maddow used the word "literally" (i.e., OAN is "literally" paid Russian propaganda),
7  Plaintiff asserts it would be unreasonable to find the statement to be hyperbolic.
8  What is noteworthy about the word "literally" is its conflicting definitions. The first
9  definition of the word is: "in a literal sense or manner: such as . . . in a way that uses
10 the ordinary or primary meaning of a term or expression [or] used to emphasize the
11 truth and accuracy of a statement or description." *Merriam-Webster Online*
12 *Dictionary*, https://www.merriam-webster.com/dictionary/literally (last visited May
13 19, 2020). But the alternative definition is: "in effect : Virtually — used in an
14 exaggerated way to emphasize a statement or description that is not literally true or
15 possible." *Id.* Further, under either definition, the term can "lose[] its meaning when
16 considered" in context. *See Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005).
17 Although Maddow used the word "literally," this does not necessarily mean the
18 phrase should be taken to be factual. Nowadays, as evidenced by the two conflicting
19 definitions of the word "literally," use of the word can be hyperbolic.

20     The Court must therefore consider the language surrounding the allegedly
21 defamatory statement to put into perspective the content of the statement. There are
22 certainly facts presented in the segment that are not in dispute. It is undisputed that
23 the *Daily Beast* article was published, wherein the author Kevin Poulsen opined that
24 Kristian Rouz has been reporting on U.S. politics for OAN and "simultaneously
25 writing for Sputnik, a Kremlin-owned news wire." (RJN Ex. A.) Rouz "is a Russian
26 national on the payroll of" Sputnik. Poulsen then detailed a few of Rouz's reports
27 for OAN, pointing out that "Kremlin propaganda sometimes sneaks into Rouz's
28 segments." Poulsen found no disclosure by OAN of Rouz's "work for Russia's state-

– 11 –

1 owned media, where he continues to file stories daily, primarily on economic news."
2 (*Id.*)

3 There is no dispute that Maddow discussed this article on her segment and
4 accurately presented the article's information. Indeed, the facts in the title of her
5 segment are not alleged to be defamatory: "Staffer on Trump-favored network is on
6 propaganda Kremlin payroll." Plaintiff agrees that President Trump has praised
7 OAN, and Rouz, a staffer for OAN, writes articles for Sputnik News which is
8 affiliated with the Russian government. (*See* Compl. ¶ 24.) Rouz is paid for his work
9 by Sputnik News. (*Id.* ¶ 26.) Maddow provided these facts in her segment before
10 making the allegedly defamatory statement.

11 The Ninth Circuit has held that "when a speaker outlines the factual basis for
12 his conclusion, his statement is protected by the First Amendment." *Partington*, 56
13 F.3d at 1156; *see also Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1067 (9th Cir. 1998)
14 (holding an opinion "based on an implication arising from disclosed facts is not
15 actionable when the disclosed facts themselves are not actionable"); *Standing Comm.*
16 *On Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430,
17 1439 (9th Cir. 1995) ("A statement of opinion based on fully disclosed facts can be
18 punished only if the stated facts are themselves false and demeaning. . . . When the
19 facts underlying a statement of opinion are disclosed, readers will understand they
20 are getting the author's interpretation of the facts presented; they are therefore
21 unlikely to construe the statement as insinuating the existence of additional,
22 undisclosed facts.").

23 The basis for Maddow's allegedly defamatory statement is clearly the story
24 from the *Daily Beast*, which she presents truthfully and in full. Thus, she sufficiently
25 provides listeners with the factual basis for her statement. Maddow "does not even
26 hint that her opinion is based on any additional, undisclosed facts not known to the
27 public." *See Cochran*, 58 F. Supp. 2d at 1122; *Copp v. Paxton*, 45 Cal. App. 4th 829,
28 837 (1996) ("A statement of opinion . . . may still be actionable if it implies the

allegation of undisclosed defamatory facts as the basis for the opinion." (citation omitted)). Viewers were presented with the details of the story before hearing the alleged defamatory statement and no additional facts were implied.

Plaintiff argues that Maddow did not present the full story, namely that "Rouz has no decision-making authority with respect to the content that is aired on OAN" and was "merely a freelancer for Sputnik News." (Opp'n at 16 (citing *Milkovich*, 497 U.S. at 18–19 ("Even if the speaker states the facts upon which he bases his opinion, if those facts are . . . incomplete . . . the statement may still imply a false assertion of fact.")).) But *Milkovich* does not require the author to include every possible fact before giving an opinion. *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1117 (9th Cir. 2003) (explaining that the logic behind *Milkovich* "is straightforward and unassailable: When a publisher prints an opinion but doesn't state the basis for it, the reader may infer a factual basis that doesn't exist. But when a publisher accurately discloses the facts on which he bases his opinion, the reader can gauge for himself whether the factual basis adequately supports the opinion" (citation omitted)); *Turner v. Wells*, 198 F. Supp. 3d 1355, 1369 (S.D. Fl. 2016) ("The dispositive question in *Milkovich* was not . . . simply whether the author left out facts that may have painted the plaintiff in a more positive light . . . ."). Maddow accurately presented the *Daily Beast* article and the basis for her statement; these facts were true and not misleading. Even if Maddow left out certain information, this does not necessarily mean her statement was defamatory; she did not "impl[y] a knowledge of facts which lead to the conclusion" that her statement was factual. *See Milkovich*, 497 U.S. at 18–19.

Further, in the sentence immediately following the contested sentence that OAN is "literally paid Russia propaganda," Maddow said, almost as a clarification, that OAN's "on-air U.S. politics reporter is paid by the Russian government to produce propaganda for that government." And, at the time Maddow made the allegedly defamatory statement, the screen was showing the *Daily Beast* article

accompanied by the text: "One of the on-air reporters at the 24-hour network is a Russian national on the payroll of the Kremlin's official propaganda outlet, Sputnik."³ Thus, Maddow immediately qualified the allegedly defamatory statement with a factual clarification and viewers were seeing accurate information regarding OAN on the screen while listening to Maddow.

In *Cochran*, the New York Post published a column wherein the author discussed Jonnie Cochran and his defense of O.J. Simpson. 58 F. Supp. 2d 1113. In the column, the author stated, "history reveals that [Cochran] will say or do just about anything to win, typically at the expense of the truth." Cochran sued for defamation. In analyzing the statement, the court noted that "the specific context [of the statement] is a collection of opinions, colorfully expressed, which renders the statement at issue simply more rhetorical hyperbole." *Id.* at 1124. The language of the column was "loose, figurative and hyperbolic." *Id.* The audience "would reasonably expect the alleged defamatory statement to constitute [] opinion, tucked in as it is, among numerous other statements of opinion in a recognizable opinion column." *Id.* at 1125. The court concluded that a reasonable factfinder could not conclude that the statement at issue is sufficiently factual to be susceptible of being

---

³ The Court finds that what viewers saw on screen while listening to Maddow is important to put the statement into context, and the following picture is what was visible on the screen at the moment Maddow made the allegedly defamatory statement:



proven true or false. *Id.* at 1126.

Here, Maddow had inserted her own colorful commentary into and throughout the segment, laughing, expressing her dismay (i.e., saying "I mean, what?") and calling the segment a "sparkly story" and one we must "take in stride." For her to exaggerate the facts and call OAN Russian propaganda was consistent with her tone up to that point, and the Court finds a reasonable viewer would not take the statement as factual given this context. The context of Maddow's statement shows reasonable viewers would consider the contested statement to be her opinion. A reasonable viewer would not actually think OAN is paid Russian propaganda, instead, he or she would follow the facts of the *Daily Beast* article; that OAN and Sputnik share a reporter and both pay this reporter to write articles. Anything beyond this is Maddow's opinion or her exaggeration of the facts.

In sum, when the total context surrounding Maddow's comment is considered, the Court finds that the context weighs towards a finding that the statement constitutes opinion and rhetorical hyperbole protected under the First Amendment.

### c. Susceptibility of Being Proven True or False

The Court last considers whether the statement is susceptible of being proven true or false.

In *Unsworth v. Musk*, the court evaluated a plaintiff's defamation suit against Elon Musk, brought because Musk had issued a tweet calling the plaintiff "pedo guy." 2019 WL 4543110. In evaluating the plaintiff's defamation suit, and specifically under the factor of susceptibility of the statement being proven true or false, the court found that "Defendant's tweets were susceptible of being proved true or false because Plaintiff either is a pedophile or he is not and, if he were, evidence could prove it." *Id.* at *8. Further, the Ninth Circuit in *Yagman* discussed the plaintiff's use of the term "dishonest" when describing a judge, and the court found that the statement was "of rhetorical hyperbole, incapable of being proved true or false." 55 F.3d at 1441. In contrast, the plaintiff's statement that the judge was

"drunk on the bench" was one that "implies actual facts that are capable of objective verification." *Id.*; *see also Rooney*, 912 F.2d at 1055 (concluding that defendant Rooney's opinion that a wind-shield treatment product "didn't work" was "based on factual observations to a sufficient extent to imply an assertion of fact"); *Cochran*, 58 F. Supp. 2d at 1125 (asking whether there is any "core of objective evidence upon which this Court could verify the allegation"). Here, taken in isolation, the statement that OAN is "literally paid Russia propaganda" is capable of verification. Either OAN receives money from the Russian government or it does not. Thus, this factor weighs in favor of a finding that viewers could conclude that the statement implied an assertion of objective fact.

### d. Summary

By protecting speakers whose statements cannot reasonably be interpreted as allegations of fact, courts "provide[ ] assurance that public debate will not suffer for lack of 'imaginative expression' or the 'rhetorical hyperbole' which has traditionally added much to the discourse of our Nation." *Milkovich*, 497 U.S. at 20 (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 53–55 (1988)). That is the case here.

Considering the totality of the circumstances—including the general context of the statements, the specific context of the statements, and the statements' susceptibility of being proven true or false—a reasonable factfinder could only conclude that the statement was one of opinion not fact.

## IV. Conclusion

For the foregoing reasons, the Court finds that the contested statement is an opinion that cannot serve as the basis for a defamation claim. Plaintiff has not shown a probability of succeeding on its defamation claims, thus, the Court **GRANTS** Defendants' Special Motion to Strike. Finally, because the Court grants the Motion, Defendants may file a motion for attorney's fees and costs. *See* Cal. Civ. Proc. Code § 425.16(c)(1) (If the movant prevails on a special motion to strike, it is "entitled to recover [its] attorney's fees and costs"). The motion is to be referred to Magistrate

– 16 –

Judge Goddard.

Because there is no set of facts that could support a claim for defamation based on Maddow's statement, the complaint is dismissed with prejudice. After Defendants' motion for attorney's fees is resolved, the Court will instruct the Clerk to close this case.

**IT IS SO ORDERED.**

DATED: May 22, 2020

Hon. Cynthia Bashant
United States District Judge