| | |
|---|---|
| 1 | THEODORE J. BOUTROUS JR., SBN 132099 |
| | tboutrous@gibsondunn.com |
| 2 | THEANE EVANGELIS, SBN 243570 |
| | tevangelis@gibsondunn.com |
| 3 | NATHANIEL L. BACH, SBN 246518 |
| | nbach@gibsondunn.com |
| 4 | MARISSA B. MOSHELL, SBN 319734 |
| | mmoshell@gibsondunn.com |
| 5 | GIBSON, DUNN & CRUTCHER LLP |
| | 333 South Grand Avenue |
| 6 | Los Angeles, CA 90071-3197 |
| | Telephone: 213.229.7000 |
| 7 | Facsimile: 213.229.7520 |
| 8 | SCOTT A. EDELMAN, SBN 116927 |
| | sedelman@gibsondunn.com |
| 9 | GIBSON, DUNN & CRUTCHER LLP |
| | 2029 Century Park East, Suite 4000 |
| 10 | Los Angeles, CA 90067-3026 |
| | Telephone: 310.552.8500 |
| 11 | Facsimile: 310.551.8741 |

Attorneys for Defendants Rachel Maddow, MSNBC Cable L.L.C., NBCUniversal Media, LLC, and Comcast Corporation

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC., | CASE NO. 19-cv-1713-BAS-AHG |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS (Cal. Civ. Proc. Code § 425.16(c)(1))** |
| v. | |
| RACHEL MADDOW; COMCAST CORPORATION; NBCUNIVERSAL MEDIA, LLC; and MSNBC CABLE L.L.C., | **COURT TO ISSUE BRIEFING SCHEDULE AND HEARING DATE** |
| Defendants. | Action Filed: September 9, 2019 |
| | Judge: Hon. Cynthia Bashant |
| | Magistrate Judge: Hon. Allison Goddard |
| | Courtroom 3B |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

    A. Plaintiff Files Its Complaint and Defendants Retain Gibson Dunn ........... 1

    B. Defendants' Counsel Prepares to File the Anti-SLAPP Motion ................ 2

    C. Plaintiff Opposes Defendants' Anti-SLAPP Motion With Improper Expert Testimony and Files An Ex Parte Application to Supplement the Record ......................................................................................................... 3

    D. The Court Hears Argument on Defendants' Motion to Strike and Plaintiff's Ex Parte Application to Supplement the Record ...................... 4

    E. The Court Grants Defendants' Motion to Strike and Dismisses Plaintiff's Complaint With Prejudice ........................................................ 4

III. ARGUMENT ........................................................................................................ 5

    A. As the Prevailing Party on Their Anti-SLAPP Special Motion to Strike, the Court Must Award Defendants Their Fees and Costs. ............. 5

    B. Defendants Seek Reasonable Attorneys' Fees. .......................................... 6

        1. The Hours For Which Defendants Seek to Recover Fees Were Reasonable and Necessary to Vindicate Defendants' Rights. ............................................................................................. 8

        2. The Requested Attorney Billing Rates Are Reasonable ................ 10

IV. CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blackburn v. ABC Legal Servs., Inc.*,
  No. 11-cv-01298, 2012 WL 1067632 (N.D. Cal. Feb. 24, 2012) ............................ 6

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) .................................................................. 10

*Christie v. Lester*,
  No. 14-08993, 2015 WL 13439821 (C.D. Cal. June 15, 2015) ........................... 6, 8

*Clifford v. Trump*,
  No. 18-06893, 2018 WL 6519029 (C.D. Cal. Dec. 11, 2018) ................................ 7

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2014) .............................................................. 5, 6, 7

*In re High-Tech Employee Antitrust Litig.*,
  No. 11-cv-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ........................... 13

*Hill v. Berryhill*,
  No. 16-2426, 2018 WL 4039912 (C.D. Cal. Aug. 22, 2018) ................................ 12

*Kearny v. Foley & Lardner*,
  553 F. Supp. 2d 1178 (S.D. Cal. 2008) ........................................................ 5

*Ketchum v. Moses*,
  24 Cal. 4th 1122 (2001) .................................................................. 5, 6, 7, 8

*Makaeff v. Trump University, LLC*,
  No. 10-cv-940, 2015 WL 1579000 (S.D. Cal Apr. 9, 2015) ................................ 10

*Masimo Corp v. Tyco Health Care Grp., L.P.*,
  No. 02-4770, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) ................................. 13

*Max Sound Corp. v. Google, Inc.*,
  No. 14-cv-04412, 2017 WL 4536342 (N.D. Cal. Oct. 11, 2017) .......................... 12

*Metabolife Int'l, Inc. v. Wornick*,
  213 F. Supp. 2d 1220 (S.D. Cal. 2002) ...................................................... 5, 7

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Nitsch v. DreamWorks Animation SKG Inc.*,
   No. 14-cv-04062, 2017 WL 2423161 (N.D. Cal. June 5, 2017) .............................. 13

*Open Source Security, Inc. v. Perens*,
   No. 17-cv-04002, 2018 WL 2762637 (N.D. Cal. June 9, 2018) .................... 9, 10, 14

*Pacer Construction Holdings Corp. v. Pelletier*,
   No. 3:19-cv-01263, 2020 WL 2571199 (S.D. Cal. May 21, 2020) .......................... 7

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   No. 12-cv-04634, 2015 WL 4932248 (N.D. Cal. Aug. 18, 2015) ............................ 6

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ............................................................................. 2, 3

*Premier Med. Mgmt. Systs., Inc. v. Cal. Ins. Guarantee Ass'n*,
   163 Cal. App. 4th 550 (2008) ............................................................................. 7, 9

*Robertson v. Rodriguez*,
   36 Cal. App. 4th 347 (1995) ................................................................................... 5

*Rosenaur v. Scherer*,
   88 Cal. App. 4th 260 (2001) ................................................................................. 10

*ScripsAmerica, Inc. v. Ironridge Global LLC*,
   No. 14-03962, 2016 WL 6871280 (C.D. Cal. Jan. 12, 2016) ................................ 13

*Serano v. Unruh*,
   32 Cal. 3d 621 (1982) ............................................................................................. 6

*Universal Elecs., Inc. v. Univ. Remote Control, Inc.*,
   130 F. Supp. 3d 1331 (C.D. Cal. 2015) ................................................................ 12

*Vargas v. City of Salinas*,
   200 Cal. App. 4th 1331 (2011) ............................................................................... 7

*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*,
   141 Cal. App. 4th 15 (2006) ................................................................................... 6

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Welk Resort Grp., Inc. v. Reed Hein & Assocs., LLC*,
 No. 3:17-cv-01499, 2020 WL 553932 (S.D. Cal. Feb. 4, 2020) .............................. 10

*Wynn v. Chanos*,
 No. 14-cv-04329, 2015 WL 3832561 (N.D. Cal. June 19, 2015) ........................... 13

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................5, 6

## I. INTRODUCTION

On May 22, 2020, this Court granted Defendants' Special Motion to Strike pursuant to California's anti-SLAPP statute ("Motion to Strike"), finding that comments Ms. Maddow made on her July 22, 2019 broadcast of *The Rachel Maddow Show* about One America News ("OAN"), a channel owned and operated by Plaintiff Herring Networks, Inc., were fully protected opinion and that Plaintiff could therefore not establish a likelihood of success on its defamation lawsuit. Dkt. 30. Pursuant to California Code of Civil Procedure section 425.16(c)(1), as the prevailing parties, Defendants Rachel Maddow, MSNBC Cable L.L.C., NBCUniversal Medial, LLC, and Comcast Corporation ("Defendants") are "entitled to recover [their] attorney's fees and costs." In its May 22 Order, the Court invited the instant Motion, by which Defendants seek $323,965 in attorneys' fees and $9,706.28 in costs for a total of $333,671.28, plus any additional fees and costs incurred in connection with preparing a Reply and attending a hearing on this Motion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiff Files Its Complaint and Defendants Retain Gibson Dunn

In September 2019, Plaintiff Herring Networks sued Defendants for defamation for comments Ms. Maddow made during a segment about OAN on *The Rachel Maddow Show*. Dkt. 1. During the show, Ms. Maddow reported on an article in *The Daily Beast*, which stated that OAN employed an on-air reporter, Kristian Rouz, who also worked for *Sputnik*, a pro-Kremlin news organization funded by the Russian government. *See id.* ¶¶ 24-27, 38. In her colorful commentary on the article, Ms. Maddow stated that "the most obsequiously pro-Trump right wing news outlet in America really literally is paid Russian propaganda. Th[eir] on air U.S. politics reporter is paid by the Russian government to produce propaganda for that government." Dkt. 1-2 at 4. Plaintiff sued Defendants, arguing Ms. Maddow's statement that the network "really literally is paid Russian propaganda" was false and defamatory. Dkt. 1.

Shortly after Plaintiff filed its Complaint, Defendants hired Gibson, Dunn and

1

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
ATTORNEYS' FEES AND COSTS

Crutcher LLP ("Gibson Dunn") to defend them in the defamation suit. Declaration of Scott A. Edelman ("Edelman Decl.") ¶ 4. Gibson Dunn attorneys quickly determined that an anti-SLAPP motion pursuant to California Code of Civil Procedure section 425.16 was the proper method to challenge Plaintiff's Complaint and assembled a small team of attorneys experienced in First Amendment jurisprudence, defamation actions, and anti-SLAPP practice to work on the case. *Id.* ¶¶ 4-6.

### B. Defendants' Counsel Prepares to File the Anti-SLAPP Motion

Once Defendants' counsel decided to file an anti-SLAPP motion, they contacted Plaintiff to meet and confer and to inform Plaintiff's counsel that Defendants intended to move to strike the Complaint based on California's anti-SLAPP law. Plaintiff did not offer to dismiss its claim during this meet and confer or at any time thereafter. *Id.* ¶ 7. The parties exchanged correspondence concerning whether Plaintiff was entitled to discovery before such a motion was filed or while it was pending. *Id.* This exchange with Plaintiff's counsel itself required legal research to confirm and convey that discovery was improper at that phase of the proceedings, where Defendants were filing an anti-SLAPP motion based solely on the Complaint and judicially noticeable materials (akin to a Rule 12(b)(6) motion to dismiss). *See Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). Nonetheless, the parties never reached agreement on whether discovery was proper at that stage. Edelman Decl. ¶ 7. As such, argument on this point was presented throughout the briefing and at the hearing on Defendants' Special Motion to Strike. *Id.*

Gibson Dunn attorneys strategized to determine what exactly to research and ultimately argue in the Motion to Strike. *Id.* ¶ 8. Not only did this matter require a deep dive into the substantive case law on protected opinion and substantially true speech, but it also required examining the interplay between California's state anti-SLAPP statute and federal procedural law. *Id.* Attorneys also spent time reviewing Ms. Maddow's statements made during her segment on *The Rachel Maddow Show* to examine the context of the alleged defamatory language. *Id.*

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants filed their Motion to Strike on October 21, 2019, Dkt. 18, which was submitted with a Request for Judicial Notice (Dkt 18-2) and Notice of Lodging of a DVD with *The Rachel Maddow Show* segment at issue (Dkt. 18-4).

### C. Plaintiff Opposes Defendants' Anti-SLAPP Motion With Improper Expert Testimony and Files An *Ex Parte* Application to Supplement the Record

On December 2, 2019, Plaintiff filed its Opposition to Defendants' Motion to Strike. Dkt. 19. The 21-page Opposition attached three declarations, one of which included 17 single-spaced pages of analysis from an alleged linguistics expert, Professor Stefan Th. Gries. Dkt. 19-5.

Once again, Defendants were forced to substantiate the position they already articulated to Plaintiff—that submission of evidence and discovery of any kind (including expert discovery) was improper at this stage of the proceedings under *Planned Parenthood*, 890 F.3d at 834. Plaintiff's evidentiary submissions and inapposite case law attempting to substantiate the submission of these declarations meant Gibson Dunn attorneys had to research and brief the impropriety of submitting expert reports and other evidence in the context of a Rule 12 motion to dismiss, the backdrop against which Defendants' anti-SLAPP motion would be decided. Edelman Decl. ¶ 11. Gibson Dunn attorneys likewise conducted further research to rebut Plaintiff's numerous arguments in their opposition brief, including arguments that Ms. Maddow's level of education and her other uses of the word "literally," months apart from the comments at issue, were probative of their meaning. Dkt. 19 at 1-2, 9-10. Defendants' counsel drafted and filed their reply brief on December 9, 2019. Dkt. 20.

The morning after Defendants filed their Reply, Plaintiff's counsel contacted Defendants' counsel and informed them of Plaintiff's intent to move *ex parte* to supplement the record with further (irrelevant) *evidence* of a segment from *Hardball*, which aired on December 9, 2019, during which Chris Matthews said OAN was "Russian owned," but later clarified his statement. Edelman Decl. ¶ 13. Defendants met and conferred with Plaintiff and informed Plaintiff that Defendants would oppose any

such application, both because the segment was irrelevant and because controlling Ninth Circuit law (*Planned Parenthood*) precluded the submission and consideration of evidence to oppose an anti-SLAPP motion brought on legal deficiencies. *Id.* Plaintiff filed its *Ex Parte* Application anyway on December 11, 2019. Dkt. 21.

Defendants' counsel conducted necessary research to oppose Plaintiff's *Ex Parte* Application and filed their Opposition on December 13, 2019. Dkt. 22.

### D. The Court Hears Argument on Defendants' Motion to Strike and Plaintiff's *Ex Parte* Application to Supplement the Record

On May 19, 2020, the Court heard telephonic argument on Defendants' Motion to Strike and Plaintiff's *Ex Parte* Application to Supplement the Record. *See* Dkt. 28. Defendants' counsel spent substantial but necessary time preparing for the hearing by reviewing and analyzing the extensive anti-SLAPP filings, as well as Plaintiff's *Ex Parte* Application to Supplement the Record. Edelman Decl. ¶ 15. Defendants' counsel re-read and analyzed the relevant legal authorities cited in Plaintiff and Defendants' briefing, and reviewed *The Rachel Maddow Show* segment and *The Daily Beast* article on which it was based. *Id.* The attorneys also drafted oral argument preparation materials to ensure adequate preparation for the hearing, and conducted a pre-hearing moot. *Id.*

### E. The Court Grants Defendants' Motion to Strike and Dismisses Plaintiff's Complaint With Prejudice

On May 22, 2020, the Court issued an Order granting Defendants' Special Motion to Strike pursuant to California Code of Civil Procedure section 425.16 and denying Plaintiff's *Ex Parte* Application to Supplement the Record. Dkt. 30.

In granting Defendants' Motion to Strike, the Court noted how *The Daily Beast* article itself stated that "'Kremlin propaganda sometimes sn[uck] into Rouz's segments'" and that Rouz's employment by both OAN and Sputnik "'complete[d] the merger between Russian state-sponsored propaganda and American conservative media. . . .'" *Id.* at 2. The Court ultimately found that Ms. Maddow's statement was protected opinion and her "own colorful commentary" regarding the facts. *Id.* at 15. The Court rejected Plaintiff's argument that Ms. Maddow's statement raised a factual issue for a jury to

decide. *See id.* at 16.

While conducting its analysis, the Court explained what Defendants' counsel had repeatedly told Plaintiff—that Defendants' Motion to Strike was akin to a Rule 12(b)(6) motion to dismiss and, as such, the Court would not consider the declarations and exhibits attached to Plaintiff's opposition brief, or the *Hardball* segment because the information was not "attached to the complaint, relied on by the complaint, or judicially noticeable." *Id.* at 6.

Finally, the Court invited Defendants to file a Motion for Attorneys' Fees and Costs pursuant to section 425.16(c)(1). *See id.* at 16.

### III. ARGUMENT

#### A. As the Prevailing Party on Their Anti-SLAPP Special Motion to Strike, the Court Must Award Defendants Their Fees and Costs.

California law provides that prevailing defendants on an anti-SLAPP motion "*shall be entitled to recover . . . attorney's fees and costs.*" Cal. Code Civ. Proc. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) ("[A]ny SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees."). Thus, an award of fees and costs that will "'adequately compensate[]'" defendants "'for the expense of responding to a baseless lawsuit'" is not discretionary, but mandatory. *Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002) (citing *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 362 (1995)); *see also Kearny v. Foley & Lardner*, 553 F. Supp. 2d 1178, 1181 (S.D. Cal. 2008) ("[I]t is well-settled that an award of attorney's fees and costs to a successful anti-SLAPP movant is mandatory.").[1] Here, Defendants successfully defeated a meritless SLAPP suit brought "primarily to chill the valid exercise" of their constitutional rights of freedom of speech—they are entitled to recover.

---

[1] The mandatory attorney fee provision of section 425.16(c)(1) applies equally to defendants prevailing under California's anti-SLAPP statute in federal court. *See, e.g.*, *Graham-Sult v. Clainos*, 756 F.3d 724, 751 (9th Cir. 2014) (noting that "[s]tate law governs attorney's fees awards based on state fee-shifting laws, *like California's anti-SLAPP statute*" (emphasis added)).

Cal. Civ. Proc. Code § 425.16(a).

The fee provision under section 425.16(c)(1) is to be construed broadly "'so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit.'" *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (citing *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 141 Cal. App. 4th 15, 22 (2006)); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. 12-cv-04634, 2015 WL 4932248, at *2 (N.D. Cal. Aug. 18, 2015) ("The dual purpose of this mandatory attorney fee award is to discourage meritless lawsuits and to provide financial relief to the victim of a SLAPP suit by imposing the litigation costs on the party seeking to chill the valid exercise of the constitutional rights of freedom of speech. . . ." (internal quotations omitted)).

Thus, in granting defendants fees under section 425.16(c)(1), courts award the fees and costs incurred broadly in connection with the motion to strike. *See Christie v. Lester*, No. 14-08993, 2015 WL 13439821, at *2 (C.D. Cal. June 15, 2015) ("While typically fees can only be awarded for hours expended in pursuit of an anti-SLAPP motion, *those hours and rates are broadly construed. . . .*" (emphasis added)). This includes not only briefing and preparation in support of the anti-SLAPP motion, but also briefing and research done in connection with the fee application. *See Ketchum,* 24 Cal. 4th at 1141 ("[A]n award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16."); *Blackburn v. ABC Legal Servs., Inc.*, No. 11-cv-01298, 2012 WL 1067632, at *2 (N.D. Cal. Feb. 24, 2012) (reciting the *Ketchum* rule). As such, Defendants here move not only for fees and costs incurred in connection with their Motion to Strike, but also in relation to the instant fee motion.

### B. Defendants Seek Reasonable Attorneys' Fees.

The only question for the Court is whether the fees Defendants seek are reasonable. In determining the reasonableness of fees under section 425.16(c)(1), California courts employ the lodestar method. *See Serano v. Unruh*, 32 Cal. 3d 621, 643

(1982); *see also Ketchum*, 24 Cal. 4th at 1131-32 (noting "a court assessing attorney fees begins with a touchstone or lodestar figure, based on the careful compilation of the time spent and reasonable hourly compensation of each attorney" (internal quotations omitted)). "The court calculates the lodestar by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work." *Pacer Construction Holdings Corp. v. Pelletier*, No. 3:19-cv-01263, 2020 WL 2571199, at *1 (S.D. Cal. May 21, 2020).

Courts consider fee applications "'on [their] own merits . . . taking into account what is reasonable under the circumstances.'" *Graham-Sult*, 756 F.3d at 751-52 (citing *Premier Med. Mgmt. Systs., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 561 (2008)) (rejecting an argument that fees were unreasonable because the award was greater than fees other courts awarded to successful anti-SLAPP defendants in other cases).

Here, Defendants' counsel seeks $323,965 in fees and $9,706.28 in costs[2], plus any additional fees and costs incurred in connection with preparing a Reply and attending a hearing on this Motion. This is an amount that is within the range of fees other courts have found reasonable. *See, e.g.*, *Graham-Sult*, 756 F.3d at 751 (affirming an anti-SLAPP fee award of $240,506 plus fees for the fee application six years ago); *Metabolife*, 213 F. Supp. 2d at 1228 (awarding $318,687 on a fee application under section 425.16 *eighteen years ago*); *Vargas v. City of Salinas*, 200 Cal. App. 4th 1331, 1338, 1352 (2011) (affirming award of $226,928 under section 425.16 *nine years ago*); *Clifford v. Trump*, No. 18-06893, 2018 WL 6519029, at *6 (C.D. Cal. Dec. 11, 2018) (granting

---

[2] Defendants understand that, pursuant to Southern District of California Local Rule 54.1(a), a bill of costs is typically required within 14 days after entry of judgment. Because Defendants are entitled to costs under section 425.16(c)(1), and because no formal judgment has been entered in this action, Defendants have not separately submitted a bill of costs, and have instead detailed their costs in the instant motion and supporting declaration. *See* Edelman Decl. ¶¶ 26-28. Should the Court find a separate bill of costs is necessary following entry of judgment, Defendants will file one promptly.

defendant $293,052 in anti-SLAPP related fees, costs, and sanctions). As detailed below, the requested amount is undoubtedly reasonable under the circumstances of this case as well.

### 1. The Hours For Which Defendants Seek to Recover Fees Were Reasonable and Necessary to Vindicate Defendants' Rights.

A fee award under section 425.16(c)(1) should "include compensation for *all* the hours reasonably spent [on the anti-SLAPP motion], including those relating solely to the fee." *Ketchum*, 24 Cal. 4th at 1133 (emphasis in original). As detailed in the Edelman Declaration, Defendants seek fees for 355.5 hours of work, plus any additional hours of work expended in connection with preparing a Reply and attending a hearing on this Motion. These hours are related to the following tasks:

(1) reviewing and analyzing Plaintiff's Complaint and discussing initial strategy to defeat Plaintiff's defamation claim;

(2) researching and drafting the Anti-SLAPP Motion and supporting documents;

(3) reviewing and responding to Plaintiff's opposition brief, including Plaintiff's improper evidentiary submission;

(4) reviewing and responding to Plaintiff's *Ex Parte* Application to Supplement the Record;

(5) preparing for and attending the hearing on the Anti-SLAPP Motion and Plaintiff's *Ex Parte* Application to Supplement the Record; and

(6) researching and drafting the Attorneys' Fees Motion and supporting documents.

All of the hours Defendants' counsel spent working on this case, which have been divided into the aforementioned categories, relate to the anti-SLAPP briefing. *Christie*, 2015 WL 13439821, at *2 (noting what is deemed "in pursuit of an anti-SLAPP motion" is "broadly construed").

Many of the hours spent working on this case were devoted to research. To begin with, this case raised questions related to the legal doctrine of protected opinion,

which requires a totality of the circumstances test in which numerous factors may be considered, thereby necessitating significant research. Edelman Decl. ¶ 8. It also raised questions concerning the relationship between California's state anti-SLAPP statute and the federal procedural law governing the parties in this district. *Id.*

On top of that, the briefing process was prolonged and made more labor-intensive by Plaintiff, who insisted on filing irrelevant and improper evidentiary submissions not once, but twice. *See* Dkt. 19-5 (Professor Th. Gries' expert declaration and report); Dkt. 21 (Plaintiff's *Ex Parte* Application to Supplement the Record with the *Hardball* segment); *see also* Edelman Decl., Ex. F at 13 (noting that the Court did not find Plaintiff's linguistics "expert's opinion very helpful" and also explaining that the Court does not "think it [is] appropriate . . . to consider [] at this stage"). Plaintiff's efforts thus necessarily lengthened the number of hours spent researching and drafting briefs, as well as the number of hours spent preparing for oral argument.

Notably, Defendants' counsel did its part to reduce the number of hours spent on this matter where those hours were not necessary. For example, when Defendants received Plaintiff's improper expert report, they did not hire their own expert to rebut Plaintiff's submission. Edelman Decl. ¶ 11. Given Defendants' understanding of the relevant case law that such evidentiary submissions were improper, counsel felt doing so would have fruitlessly added to the number of hours spent defending this case, and needlessly compounded the Court's review of Defendants' Motion. *Id.*

The 355.5 hours spent working on these anti-SLAPP related tasks are prima facie reasonable. Courts have found similar numbers of hours reasonable in other cases. *See, e.g.*, *Premier Med. Mgmt. Systs.,* 163 Cal. App. 4th at 560, 565 (finding 345 hours spent by counsel working on a joint motion to strike was reasonable); *Open Source Security, Inc. v. Perens*, No. 17-cv-04002, 2018 WL 2762637, at *7 (N.D. Cal. June 9, 2018) (granting fees for 446 hours, including for motions to strike and other briefs). Here, Gibson Dunn attorneys expended only those number of hours necessary

to vindicate Defendants' rights.  They should be compensated for the total number of hours requested.

### 2. The Requested Attorney Billing Rates Are Reasonable.

Once courts establish the number of hours worked, they multiply the hours with the reasonable value of the attorneys' services.  "To determine the reasonable hourly rate, the court looks to 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Open Source Security*, 2018 WL 2762637, at *3 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986)).

Here, Defendants' counsel was retained on a modified contingency fee basis.  Defendants agreed to pay Gibson Dunn attorneys $100,000 for the filing and argument of the Anti-SLAPP Motion, and further agreed that if Defendants were successful on that Motion and recovered from Plaintiff, they would pay Gibson Dunn any difference between the $100,000 and the fees Defendants' counsel incurred.  Edelman Decl. ¶ 17.  Both federal and state courts are clear that contingency fee arrangements should not negatively impact the ability of defense counsel to recover fees actually incurred.  Courts have stated that section 425.16 "should be construed to permit recovery of attorney fees that are accrued by outside counsel representing a party on a partial pro bono" or contingency fee "basis, where counsel has not waived the right to seek recovery of the attorney fees from third parties . . . but *only from the client*."  *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001) (emphasis added); *see also Welk Resort Grp., Inc. v. Reed Hein & Assocs., LLC*, No. 3:17-cv-01499, 2020 WL 553932, at *2 (S.D. Cal. Feb. 4, 2020) (awarding attorneys their full hourly rate for the hours worked on an anti-SLAPP motion, even where a discount rate was charged on an arrangement "akin to a contingency basis"); *Makaeff v. Trump University, LLC*, No. 10-cv-940, 2015 WL 1579000, at *4-*5, *27 (S.D. Cal Apr. 9, 2015) (granting hourly-based fees even where there was a contingency fee arrangement for the anti-SLAPP motion).

To recover the fees actually incurred, Defendants' counsel seeks reimbursement

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

for the services of the following Gibson Dunn attorneys, whose individual hourly rates and credentials are as follows:

Theodore J. Boutrous, Jr. is a partner at Gibson Dunn with a standard hourly rate of $1,450 in 2019 and $1,525 in 2020. Edelman Decl., ¶¶18-19. Mr. Boutrous has over 30 years of legal experience and is a decorated First Amendment attorney. *See id.*, Ex. A. He has been named Litigator of the Year by *The American Lawyer* and one of the 100 Most Influential Lawyers in America by *The National Law Journal*. *Id.* at 2-3. Mr. Boutrous has received the Hugh M. Hefner Foundation's First Amendment Award, the 2020 Freedom of Press Award from the Reporters Committee for Freedom of the Press, and the Distinguished Leadership Award by PEN America. *Id.* at 3. He has argued more than 100 appeals, including before the Supreme Court of the United States, 12 different federal circuit courts of appeals, and nine different state supreme courts. *Id.* at 2.

Scott A. Edelman is a partner at Gibson Dunn with a standard hourly rate of $1,335 in 2019 and $1,395 in 2020. *Id.* ¶¶18-19. Mr. Edelman has over 30 years of legal experience and is one of the country's preeminent media and entertainment attorneys. *See id.*, Ex. B. He is Co-Chair of Gibson Dunn's Media, Entertainment and Technology Practice Group, with substantial experience trying high stakes cases. *See id.* at 2. He has twice been named Litigator of the Week by *The American Lawyer*, one of 32 Winning Litigators by *The National Law Journal*, one of the Top 100 Lawyers in California by *The Daily Journal*, and has been repeatedly recognized by *The Hollywood Reporter* as one of the Top 100 Power Lawyers. *Id.* at 2-3. Mr. Edelman has received the Clay Award for Lawyer of the Year and has been recognized as the Attorney of the Year by *The Recorder*. *Id.* at 3.

Nathaniel L. Bach is a senior associate at Gibson Dunn with a standard hourly rate of $915 in 2019 and $960 in 2020. *Id.* ¶¶ 18-19. Mr. Bach has over 10 years of legal experience working as a media and entertainment litigator at Gibson Dunn. *See id.*, Ex. C. Mr. Bach has spoken on First Amendment and entertainment law issues, writes frequently on media and entertainment law issues, and has been named Litigator of the

Week by *AmLaw Litigation Daily*. *Id.* at 2-4, 5.

Marissa B. Moshell is a mid-level associate at Gibson Dunn with a standard hourly rate of $625 in 2019 and $740 in 2020. *Id.* ¶¶ 18-19. Ms. Moshell has three years of legal experience as a litigator at Gibson Dunn. *See id.*, Ex. D. Ms. Moshell has experience working on a variety of commercial disputes, including First Amendment, anti-SLAPP, and other media and entertainment actions. *See id.* at 2.

Daniel Rubin is a mid-level associate at Gibson Dunn with a standard hourly rate of $625 in 2019. *Id.* ¶ 18. Mr. Rubin has three years of legal experience as a general commercial litigator, including experience with media and entertainment disputes. *See id.*, Ex. E. Before joining Gibson Dunn, Mr. Rubin clerked for the Honorable Gregg Costa of the United States Court of Appeals for the Fifth Circuit. *Id.* at 2.

In addition to seeking fees for the attorneys on this matter, Defendants' counsel also seeks fees for hours expended by paralegals and other professionals. These individuals include Lolita Gadberry, a paralegal with 35 years of experience with a standard hourly rate of $460 in 2019 and $480 in 2020, and Duke Amponsah, a paralegal with over 20 years of experience with a standard hourly rate of $480 in 2020. This also includes Erin Kurinsky and Carla Jones, researchers at Gibson Dunn with a standard hourly rate of $270. *Id.* ¶¶ 18-19.

The aforementioned rates are in accord with what other California district courts have found reasonable. *See, e.g.*:

- *Universal Elecs., Inc. v. Univ. Remote Control, Inc.*, 130 F. Supp. 3d 1331, 1337 (C.D. Cal. 2015) (explaining certain "partners at major law firms" billed up to $1,100 per hour five years ago);
- *Hill v. Berryhill*, No. 16-2426, 2018 WL 4039912, at *2 (C.D. Cal. Aug. 22, 2018) (finding an hourly rate of $1,067 reasonable);
- *Max Sound Corp. v. Google, Inc.*, No. 14-cv-04412, 2017 WL 4536342, at *12 (N.D. Cal. Oct. 11, 2017) (holding rates up to $950 per hour were "in line with the billing rates for attorneys with similar qualifications" in the area three years ago);

- *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-cv-04062, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates between $870 and $1,200 per hour for senior attorneys "fair and reasonable" three years ago);
- *ScripsAmerica, Inc. v. Ironridge Global LLC*, No. 14-03962, 2016 WL 6871280, at *5 (C.D. Cal. Jan. 12, 2016) (granting fees based upon $950 per hour for partners, $700 per hour for associates, and $350 per hour for paralegals at Gibson Dunn four years ago);
- *In re High-Tech Employee Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (awarding, for the years 2011 through 2015, partner rates up to $975 per hour, non-partner attorney rates up to $800 per hour, and paralegal rates up to $430 per hour);
- *Wynn v. Chanos*, No. 14-cv-04329, 2015 WL 3832561, at *2 (N.D. Cal. June 19, 2015) (finding a rate of $1,085 per hour for a partner and $710 per hour for associates reasonable five years ago);
- *Masimo Corp v. Tyco Health Care Grp., L.P.*, No. 02-4770, 2007 WL 5279897 (C.D. Cal. Nov. 5, 2007) (finding $1,000 per hour reasonable for a partner thirteen years ago).

Recent 2019 and 2020 fee applications to federal courts in California also demonstrate that rates up to $1,325 per hour are charged by litigation partners at peer firms, and rates as high as $1,050 are charged by litigation associates at comparable firms. *See* Edelman Decl., Ex. G at 7-9 (showing 2019 and 2020 rates charged by attorneys at Weil, Gotshal & Mages LLP for a matter in the northern district of California); *id.*, Ex. H at 2 (showing certain 2019 rates charged by senior attorneys in the northern district of California were over $1,000 per hour); *id.*, Ex. I at 139, 257 (showing certain rates charged by attorneys in federal courts in California, and reporting that, as early as 2012, senior attorneys were charging over $800 per hour in the southern district and, as early as 2013, senior attorneys were charging over $1,000 per hour in the central district).

Taking into account the rates of other peer firms with attorneys of comparable

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

Gibson, Dunn & Crutcher LLP

"skill, experience, and reputation" in the community, Gibson Dunn's standard hourly rates are reasonable. *Open Source Security*, 2018 WL 2762637, at *3 (internal quotations omitted). Defendants' counsel should thus be granted fees based upon their standard hourly rates charged.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court award them reasonable attorneys' fees and costs in the amount of $333,671.28, plus any additional fees and costs incurred in connection with preparing a Reply and attending a hearing on this Motion.

DATED: June 5, 2020     Respectfully Submitted,


GIBSON, DUNN & CRUTCHER LLP


By: /s/ *Scott A. Edelman* _
    Scott A. Edelman

Attorneys for Defendants