LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
AMNON Z. SIEGEL (State Bar No. 234981)
asiegel@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Plaintiff Herring Networks, Inc.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC.,<br><br>            Plaintiff,<br><br>      v.<br><br>RACHEL MADDOW; COMCAST CORPORATION; NBC UNIVERSAL MEDIA, LLC; AND MSNBC CABLE LLC.<br><br>            Defendants. | **CASE NO. 3:19-cv-01713-BAS-AHG**<br><br>Assigned for All Purposes to:<br>Hon. Cynthia Bashant<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>*[Filed Concurrently with Declaration of Amnon Z. Siegel and Evidentiary Objections in Support of Opposition]*<br><br>Action Filed:     September 9, 2019<br>Trial Date:        None |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................... 2

    A.    The Lawsuit ................................................................................................ 2

    B.    The Anti-SLAPP Motion ........................................................................... 3

    C.    The Court Grants The Anti-SLAPP Motion, And Plaintiff Appeals ......... 4

III. DEFENDANTS' FEE REQUEST IS UNREASONABLE ..................................... 4

    A.    Defendants' Rates Exceed The Reasonable Rates For This Matter .......... 5

        1.    The Attorneys' Hourly Rates Are Excessive ................................. 5

        2.    The Paralegal Rates Are Excessive and Unsubstantiated .............. 8

    B.    The Hours Worked Are Excessive ............................................................ 9

        1.    Experienced Counsel .................................................................... 10

        2.    Overstaffing and Duplicative Work ............................................. 10

        3.    Work Not Related to the Anti-SLAPP Motion ........................... 11

        4.    Ministerial Tasks .......................................................................... 12

IV. CONCLUSION .................................................................................................... 12

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*Ambriz v. Arrow Fin. Servs., LLC*,
  No. CV 07-5423-JFW (SSx), 2008 WL 2095617 (C.D. Cal. May 15, 2008) ..................... 12

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) ................................................................................... 1, 5

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
  No. 10-CV-419-GPC (WVG), 2014 WL 5438532 (S.D. Cal. Oct. 24, 2014) ..................... 8

*Clifford v. Trump*,
  No. CV 18-06893-SJO (FFMx), 2018 WL 6519029 (C.D. Cal. Dec. 11, 2018) ................. 9

*Cornwell v. Belton*,
  No. 04-CV-658 H(BLM), 2008 WL 80724 (S.D. Cal. Jan. 7, 2008) ................................... 7

*D'Lil v. Best W. Encina Lodge & Suites*,
  No. CV 02-9506 DSF (VBKx), 2010 WL 11655476 (C.D. Cal. Apr. 13, 2010) ............... 12

*Fleming v. Coverstone*,
  No. 08cv355 WQH (NLS), 2009 WL 764940 (S.D. Cal. Nov. 18, 2009) ........................... 7

*Graham-Sult v. Clainos*,
  756 F.3d 724 (9th Cir. 2014) .............................................................................................. 9

*In re High-Tech Emp. Antitrust Litig.*,
  No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .............................. 8

*Metabolife Int'l, Inc. v. Wornick*,
  213 F. Supp. 2d 1220 (S.D. Cal. 2002) ............................................................................. 9

*Milton H. Green Archives, Inc. v. Julien's Auction House, LLC*,
  No. CV 05-7686 AHM (FMOx), 2007 WL 4898365 (E.D. Cal. Dec. 20, 2007) ............... 11

*Mogck v. Unum Life Ins. Co. of Am.*,
  289 F. Supp. 2d 1181 (S.D. Cal. 2003) ........................................................................... 11

*Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*,
  371 F. App'x 719 (9th Cir. 2010) ...................................................................................... 8

*Ravet v. Stern*,
  No. 07CV31 JLS (CAB), 2010 WL 3076290 (S.D. Cal. Aug. 6, 2010) ............................. 7

*Rudy v. City of Lowell*,
  883 F. Supp. 2d 324 (D. Mass. 2012) ............................................................................. 10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
  No. CV 14-03962 SJO (AGRx), 2016 WL 6871280 (C.D. Cal. Jan. 12, 2016) ................. 8

463888.3                                        ii                    Case No. 3:19-cv-01713-BAS-AHG
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

*(Left margin: Miller Barondess, LLP, Attorneys at Law, 1999 Avenue of the Stars, Suite 1000, Los Angeles, California 90067, Tel: (310) 552-4400  Fax: (310) 552-8400)*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Sorenson v. Mink*,
    239 F.3d 1140 (9th Cir. 2001) .......................................................................................... 5

*Souryavong v. Lackawanna County*,
    159 F. Supp. 3d 514 (M.D. Pa. 2016) ............................................................................ 10

*Yeager v. Bowlin*,
    No. CIV. 2:08-102 WBS JFM, 2010 WL 2303273 (E.D. Cal. June 7, 2010) ................ 12

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*,
    No. 10-CV-0541-GPC (WVG), 2014 WL 6851612 (S.D. Cal. Dec. 3, 2014) ................ 8

**STATE CASES**

*590 E. Cty. Boulevard LLC v. Backcountry Against the Dump, Inc.*,
    6 Cal. App. 5th 426 (2016) ............................................................................................. 7

*Christian Research Inst. v. Alnor*,
    165 Cal. App. 4th 1315 (2008) ............................................................................ 5, 11, 12

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) .................................................................................................. 5

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
    39 Cal. App. 4th 1379 (1995) ....................................................................................... 11

*S. B. Beach Props. v. Berti*,
    39 Cal. 4th 374 (2006) .................................................................................................. 11

*Vargas v. City of Salinas*,
    200 Cal. App. 4th 1331 (2011) ....................................................................................... 9

**FEDERAL RULES**

Fed. R. Civ. P. 26 ....................................................................................................................... 3

**OTHER AUTHORITIES**

S. Comm. on Judiciary, analysis of S. 1264, 1991-1992 Reg. Sess. (as introduced Jan. 6,
    1992) ............................................................................................................................. 11

*U.S. Bureau of Labor Statistics*,
    https://www.officialdata.org/us/inflation/2008?amount=450 (last visited June 25,
    2020) ............................................................................................................................... 7

## I. INTRODUCTION

Defendants seek more than $300,000 in attorneys' fees for a single anti-SLAPP motion challenging a single cause of action for defamation over a one-line statement. Defendants have not met their burden to justify this exorbitant request.

According to Defendants' counsel, the statement at issue was a "classic example of nonactionable opinion based on truthful disclosed facts." Yet Defendants still retained two senior, high-profile partners, along with a large team of associates, paralegals, and "researchers," to rack up over 355 hours of work. Defendants' overstaffing led to excessive, duplicative, and unnecessary work. Defendants are now trying to collect all of those unwarranted fees from Plaintiff.

Defendants also seek astronomical rates of up to $1,525 per hour for one partner and $1,395 for another. The rates for associates are also excessive: one associate (Mr. Bach) charges just under $1,000 per hour ($960); and a junior associate's rate (Ms. Moshell, who graduated from law school three years ago and spent over 100 hours on the anti-SLAPP motion) is $740 per hour. Defendants fail to submit evidence meeting their burden of showing these rates are appropriate for this type of case in this community. Instead, Defendants point to requested rates from the $59 billion Pacific Gas & Electric bankruptcy in the Northern District of California, which are still lower than Defendants' exorbitant rates. Defendants' strategy seems to be to request an outlandish rate such that, even when it is reduced, they still receive above-market fees. This strategy should not be countenanced.

The law is clear: Defendants are entitled only to the reasonable hourly rates prevailing in the community for similar work. The "relevant community" is the district in which the lawsuit proceeds. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). Defendants do not point to a *single* decision from the Southern District of California or California state court cases in San Diego to support the rates they request for a straightforward, one-claim defamation case. That is because the prevailing rates in the Southern District of California for this type of work are

significantly lower (even for more complex matters); specifically, reasonable rates for a similar anti-SLAPP motion in the Southern District of California would be $535 per hour for partners, $300 per hour for senior associates, and $260 per hour for junior associates.  This prevailing rate is approximately three times *lower* than the rates Defendants seek here.

On top of overbilling, overstaffing, and excessive hourly rates, Defendants are also requesting fees that are not recoverable under the anti-SLAPP statute, including fees for procedural matters and case management unrelated to the anti-SLAPP motion.

The Court should reject Defendants' request for a market-shattering fee award.  Plaintiff respectfully requests that the Court give Defendants what the law provides for: a lodestar award based on reasonable market rates and hours appropriately spent.  As set forth in more detail below and the concurrently filed Declaration of Amnon Z. Siegel ("Siegel Decl."), the Court should award no more than $84,995.80 in fees.

## II. BACKGROUND

### A. The Lawsuit

This action arises out of a short July 22, 2019 segment of the Rachel Maddow Show on MSNBC.  (Compl. ¶ 35.)  On the show, Maddow made the claim that Plaintiff's news network, One America News ("OAN"), "really literally is paid Russian propaganda."  (*Id.* ¶ 38.)

On July 25, 2019, OAN wrote to Maddow requesting a retraction because the statement is provably false (OAN is owned and funded exclusively by the Herring family located in San Diego).  (*Id.* Ex. B.)  Though one of Maddow's colleagues (Chris Matthews) would later retract a similar statement about OAN, Maddow refused.  (*Id.* Ex. C.)  On September 9, 2019, Plaintiff filed a Complaint asserting a single claim for defamation.

## B. The Anti-SLAPP Motion

On September 25, 2019, counsel for Defendants contacted Plaintiff's counsel to inform them of Defendants' intention to file the anti-SLAPP motion. (Siegel Decl. ¶ 2.) Defendants did not initially specify whether their anticipated motion would raise factual issues requiring discovery. (*Id.*) On September 26, 2019, Defendants' counsel informed Plaintiff's counsel that they did not intend to raise factual issues in their anti-SLAPP motion, but did not disclose what the basis for their motion would be. (*Id.* ¶ 3.)

On September 26, 2019, Plaintiff's counsel explained that Plaintiff could not simply take Defendants at their word that their anti-SLAPP motion would not involve factual issues and requested to meet and confer to discuss the basis of their motion. (Siegel Decl. ¶ 4.) The parties held that conference on October 7, 2019. Defendants' counsel told Plaintiff's counsel that their motion would not challenge the malice element (an issue commonly requiring discovery). (*Id.*) While Defendants claim that the parties "did not reach agreement on the permissibility of discovery" (Edelman Decl. ¶ 7), Plaintiff thereafter did not propound discovery on Defendants or make any motion for expedited discovery. (Siegel Decl. ¶ 5.) The parties did not hold, and Plaintiff did not ask for, a Rule 26 conference nor did the parties file Rule 26 reports. (*Id.*)

Defendants filed their anti-SLAPP motion on October 21, 2019. (Dkt. 18.) The motion was framed as a pleadings challenge. (*Id.*) The issue presented was whether Maddow's statement as alleged was protected opinion or, if not, was substantially true. (*Id.*)

On December 2, 2019, Plaintiff filed its opposition. (Dkt. 19.) The opposition included an expert analysis from Professor Stefan Gries and other evidence. (Dkt. 19-5.)

Defendants filed their reply on December 9, 2019. (Dkt. 20.) Defendants did not address the substance of Plaintiff's evidentiary submissions or provide their own

evidence. (*Id.*) Instead, Defendants argued that evidentiary submissions were procedurally improper. (*Id.*) The rest of the reply brief was a rehashing of the arguments Defendants made in their opening anti-SLAPP motion. (*Id.*)

On December 9, 2019, Chris Matthews, the host of "Hardball," a popular TV show on MSNBC, stated that OAN was "Russian owned," but later retracted his statement. (Dkt. 21.) On December 11, 2019, Plaintiff filed an *ex parte* application to supplement the record with the video and transcript of Matthews' segment. (*Id.*) Defendants filed a four-page opposition to the *ex parte* application on December 13, 2019. (Dkt. 22.)

The Court held a telephonic hearing on the anti-SLAPP motion on May 19, 2020. During the hearing, counsel for Defendants stated that the defamatory statement at issue was a "classic example of nonactionable opinion based on truthful disclosed facts," and he'd never "seen a case where there has been more Ninth Circuit decisions that directly support" Defendants' position. (Siegel Decl. Ex. A (Transcript of May 19 Proceedings at 5:3-7).)

### C. The Court Grants The Anti-SLAPP Motion, And Plaintiff Appeals

On May 19, 2020, the Court issued an order granting Defendants' anti-SLAPP motion. (Dkt. 30.) Although the Court found that Maddow's statement was susceptible to being proven true or false, the Court held that a reasonable factfinder could nevertheless only conclude that the statement was one of opinion. (*Id.*)

On June 2, 2020, Plaintiff filed a notice of appeal. (Dkt. 31.) In light of the pending appeal, Plaintiff suggested that Defendants raise the issue of attorneys' fees after resolution of the appeal, when it would either be moot or could be handled more efficiently in combination with their fees motion for the appeal. (Siegel Decl. ¶ 8.) Defendants never responded to Plaintiff's request. (*Id.*)

### III. DEFENDANTS' FEE REQUEST IS UNREASONABLE

The California Supreme Court has ruled that the "lodestar adjustment approach should be applied to fee awards under Code of Civil Procedure section

425.16" based on the "careful compilation of the time spent and reasonable hourly compensation of each attorney" who worked on the motion. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32, 1136 (2001) (citation omitted). The Legislature "did not intend recovery of fees and costs as a windfall." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1321 (2008). Courts have "broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Id*. at 1321-22 (citation omitted) (affirming reduction of recoverable hours on anti-SLAPP motion in defamation action from 600 to 71).

### A. Defendants' Rates Exceed The Reasonable Rates For This Matter

#### 1. The Attorneys' Hourly Rates Are Excessive

Defendants cannot justify the astronomical rates—as high as **$1,525** per hour—they use for their proposed lodestar calculation.

Defendants admit that rates in a fee award must be calculated based upon "the reasonable hourly rate *prevailing in the community* for *similar work*." (Mot. at 7:5-6 (emphasis added).) The "relevant community" is the district in which the lawsuit proceeds. *Barjon*, 132 F.3d at 500. But Defendants do not point to a *single* decision from the Southern District of California to support the rates they request. As the moving parties, Defendants bear the burden of proof as to the prevailing market rate. *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001). They have failed to meet that burden.

In fact, Defendants' own evidence undermines the reasonableness of their rates. Defendants submit an excerpt from the Public Rates Report issued by Thomson Reuters on January 14, 2020. (Edelman Decl. Ex. H.) As an initial matter, the Public Rates Report is devoid of any detail concerning the type of work the attorneys performed for those rates or whether a court deemed them reasonable. The relevant inquiry must be focused on rates in the community for "similar work," so the Public Rates Reports are not reliable evidence because they do not identify the type of work involved. Moreover, this report "shows the rates charged by

attorneys in various jurisdictions, including the *northern* and *central* districts of California," with rates in the Northern District of California of up to $1,145 per hour. (*Id.* (emphasis added).) Defendants would like to keep the focus on the wrong jurisdictions (Northern and Central District of California), because the rates are higher there. That is not the law. Defendants must prove their rates are reasonable in the Southern District of California, but they have not done so.

Defendants also submit a 2018 version of the same Public Rates Report (the "2018 Report"). (*Id.* Ex. I.) Without specifying the type of work involved, the 2018 Report nonetheless shows that rates in the Southern District of California are far less than what Defendants seek. (*See id.* at 18 ($640 per hour for partner at Sheppard Mullin Richter & Hampton in 2015, $575 per hour for senior associate with 13 years' experience); *id*. at 64 ($435 per hour for partner); *id*. at 71 ($590 per hour for partner, $395 per hour for associate with seven years' experience); *id*. at 80 ($595 per hour for shareholder, $350 per hour for associate); *id*. at 104 ($550 per hour for partner); *id*. at 117 ($550 per hour for partner, $295 per hour or associate). Defendants cherry-pick the highest rate they could identify—$800 per hour, still *many hundreds* of dollars less than what they seek—but they are not entitled to the exception; they are entitled to the *prevailing* rates.

Defendants' contention that their rates are "in accord with what other California district courts have found reasonable" is thus misguided because they cite exclusively to cases from other districts: the Northern and Central Districts of California. (Mot. at 12:19-13:17.) Those cases are not relevant to establishing the prevailing rate in the local community at issue here. Defendants' submission of an April 2020 fee application from a bankruptcy court in the Northern District of California illustrates the overreaching Defendants engage in to justify their exorbitant hourly rates. (Edelman Decl. Ex. G.) Again, the Northern District is not the relevant community. Making matters worse, those proceedings involve a complex $59 billion Chapter 11 reorganization plan for Pacific Gas & Electric, one

of the nation's largest public utility providers—proceedings far more complex than determining whether a single sentence was fact or opinion.  (Siegel Decl. Ex. B.)

There is a reason Defendants do not point to any case law on the rates in the Southern District of California: case law shows that the prevailing rates in the Southern District of California and San Diego are significantly less than what Defendants are requesting here: *590 E. Cty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 6 Cal. App. 5th 426, 437-39 (2016) (hourly rate of $275 per hour was reasonable for anti-SLAPP motion challenging a single cause of action); *Ravet v. Stern*, No. 07CV31 JLS (CAB), 2010 WL 3076290, at *5 (S.D. Cal. Aug. 6, 2010) (finding hourly rate of $350 for complex civil litigator practicing since 1981 was reasonable); *Fleming v. Coverstone*, No. 08cv355 WQH (NLS), 2009 WL 764940, at *7 (S.D. Cal. Nov. 18, 2009) (finding that $425 for shareholder, $245 for senior associate, and $220 for junior associate were reasonable hourly rates for the anti-SLAPP attorneys' fees for defamation claim based on the Court's "knowledge of prevailing standards in the community"); *Cornwell v. Belton*, No. 04-CV-658 H(BLM), 2008 WL 80724, at *1 (S.D. Cal. Jan. 7, 2008) (granting anti-SLAPP attorneys' fees at $400 per hour for the lead counsel and partner, $350 for appellate law and motion counsel, and $250 for associates).  Given this authority, reasonable rates in the community when these cases were decided would be approximately $450 per hour for partners, $250 per hour for senior associates, and $220 per hour for junior associates.

After adjusting for inflation over this time period,[1] Plaintiff respectfully requests that the Court reduce the recoverable hourly rates to prevailing rates in the community as follows: $535 for partners, $300 for senior associates, and $260 for

---

[1] According to the U.S. Bureau of Labor Statistics' Consumer Price Index, today's prices in 2020 are 19.09% higher than average prices in 2008.  *See* https://www.officialdata.org/us/inflation/2008?amount=450 (last visited June 25, 2020).

junior associates.[2]

## 2. The Paralegal Rates Are Excessive and Unsubstantiated

Defendants seek hourly rates of $460 per hour for a paralegal and $270 per hour for two "researchers." But Defendants have failed to produce any evidence to support these requested rates. And legal authority shows that these rates are actually similar to prevailing *attorney* rates. There is thus no justification for these rates.[3]

Defendants cite only two cases granting fees for paralegals—one in the Central District of California (*ScripsAmerica, Inc. v. Ironridge Glob. LLC*, No. CV 14-03962 SJO (AGRx), 2016 WL 6871280 (C.D. Cal. Jan. 12, 2016)) and one from the Northern District of California (*In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015). Defendants have presented *no evidence* of prevailing rates for paralegals or researchers in the relevant community—the Southern District of California. Defendants have not met their burden as to these fees. The Court should therefore deny their request for paralegal and researcher fees. *See Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10-CV-0541-GPC (WVG), 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014) (denying paralegal fees because insufficient facts were presented as to the paralegal hourly rate); *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2014 WL 5438532, at *5 (S.D. Cal. Oct. 24, 2014) (same).

The paralegals and researchers collectively billed 16.8 hours. (Edelman Decl.

---

[2] The amount of the reduction for Defendants' excessive hourly rates, and other improper fees sought by Defendants, is set forth in the conclusion below.

[3] Mr. Edelman's Declaration stating that he "believe[s] that Gibson Dunn staffed and litigated this case in a reasonable, efficient, and appropriate manner" is conclusory and inadmissible. The Court should disregard that statement, which certainly does not support the excessive hours and rates here. *See Plush Lounge Las Vegas LLC v. Hotspur Resorts Nev. Inc.*, 371 F. App'x 719, 720 (9th Cir. 2010) (district court "did not abuse its discretion in striking large portions" of declarations which "presented legal conclusions").

¶ 24.)  The Edelman Declaration does not explain how much of this time was billed at 2019 or 2020 rates, so it is impossible to precisely quantify the exact appropriate reduction.  Plaintiff calculates that Defendants request approximately $7,623 in unsubstantiated fees for paralegals and researchers.  This is not compensable.

### B. The Hours Worked Are Excessive

Defendants spent over *350 hours* on a single anti-SLAPP motion concerning a single cause of action for defamation that hinged on a single statement.  Defendants fail to identify authority justifying these hours.

Instead, Defendants point to a series of decisions whose differences from this matter serve to highlight how excessive their request is in context.  (Mot. at 7:14-8:3.)  The anti-SLAPP motion at issue in *Graham-Sult v. Clainos*, 756 F.3d 724 (9th Cir. 2014), challenged nine causes of action, implicating complex issues surrounding the application of the litigation privilege, the statute of limitations, res judicata, and the business judgment rule.  *Id*. at 734-748.  *Metabolife International, Inc. v. Wornick*, 213 F. Supp. 2d 1220 (S.D. Cal. 2002), considered an anti-SLAPP motion that challenged five causes of action and had already gone up on appeal to the Ninth Circuit.  *Id*. at 1220-21.  Similarly, in *Vargas v. City of Salinas*, 200 Cal. App. 4th 1331 (2011), the case had already made its way up to the California Supreme Court, resulting in a seminal decision on the propriety of government spending during elections, and the fee award included fees for the appellate proceedings.  *Id*. at 1336, 1351.  In *Clifford v. Trump*, No. CV 18-06893-SJO (FFMx), 2018 WL 6519029 (C.D. Cal. Dec. 11, 2018)—a high profile case against *the President*—the court noted that the parties had briefed and litigated several other motions prior to the anti-SLAPP motion, which was recoverable under Texas' anti-SLAPP statute.  *Id*. at *2-3.  None of these cases support Defendants' request to recover over 350 hours on an anti-SLAPP motion that challenged a single cause of action about one statement on a brief segment of a cable news show.

In particular, the Court should reduce the number of lodestar hours because of

the following reasons:

### 1. Experienced Counsel

According to Defendants, Theodore J. Boutrous is "a decorated First Amendment attorney" and Scott A. Edelman is "one of the country's preeminent media and entertainment attorneys." (Mot. at 11.) One might think that hiring *two* of the nation's leading partners on the issues raised by the anti-SLAPP motion would at least have cut down on extensive background research into the area—instead, they and their team of associates, paralegals, and researchers collectively billed over 350 hours. In light of their experience and the limited set of issues implicated in the anti-SLAPP motion, Defendants' requested hours should be reduced. *See Rudy v. City of Lowell*, 883 F. Supp. 2d 324, 327 (D. Mass. 2012) (cutting the billed hours in half because the attorney "contends that his skill and familiarity enabled him to work efficiently but, in light of that experience, the time spent on such work was excessive"); *Souryavong v. Lackawanna County*, 159 F. Supp. 3d 514, 538 (M.D. Pa. 2016) (cutting hours by nearly half because experienced attorney should have been familiar with the issues).

Moreover, Scott Edelman's time (17.5 hours) should be cut entirely, as it was completely unnecessary to staff this case with two high-profile senior partners.

### 2. Overstaffing and Duplicative Work

Despite calling Maddow's statement a "classic example of nonactionable opinion based on truthful disclosed facts," Boutrous and Gibson Dunn chose to staff this case with five attorneys, two paralegals, and two researchers. Two of the associates on the case have only three years of legal experience. (Edelman Decl. Exs. D & E.) It is clear that Defendants' counsel viewed this case as an opportunity to train new associates and now wants OAN to cover the cost of that training.

This overstaffing resulted in excessive fees for duplicative work. The time entries show that two associates spent significant time researching the same issues. (Siegel Decl. ¶ 10.) Associates with minimal legal experience also spent excessive

time drafting the anti-SLAPP motion (apparently as a training exercise), which was then revised by a more senior associate, and then revised again by two partners. (*Id.*)

In one instance, multiple attorneys spent hours drafting a one-page set of notes for the hearing on the anti-SLAPP motion. (*Id.* ¶ 11.) Moreover, the time entries show substantial time spent on internal communications between and among the many lawyers staffed on the case. (*Id.* ¶ 12.)

These duplicative and unwarranted hours justify a 10% across-the-board reduction. *See Milton H. Green Archives, Inc. v. Julien's Auction House, LLC*, No. CV 05-7686 AHM (FMOx), 2007 WL 4898365, at *6 (E.D. Cal. Dec. 20, 2007) (reducing fee award by 10% based on duplicative work); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1195 (S.D. Cal. 2003) (reducing fees for "redundant, or otherwise unnecessary" hours spent on internal communications (citation omitted)); *Christian Research Inst.*, 165 Cal. App. 4th at 1326 (finding matter was "overstaffed" and reducing fees where five attorneys were deployed on anti-SLAPP motion).

### 3. Work Not Related to the Anti-SLAPP Motion

The California Supreme Court has made clear that "the fee 'provision [in Section 425.16] applies only to the motion to strike, and not to the entire action.'" *S. B. Beach Props. v. Berti*, 39 Cal. 4th 374, 381 (2006) (quoting S. Comm. on Judiciary, analysis of S. 1264, 1991-1992 Reg. Sess. (as introduced Jan. 6, 1992, p.5)); *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 39 Cal. App. 4th 1379, 1383 (1995) (reversing fee award because trial court awarded fees for work other than on the anti-SLAPP motion); *Christian Research Inst.*, 165 Cal. App. 4th at 1323-26 (same).

Despite that clear guidance, Defendants seek to recover for the following categories of work that were unrelated to the anti-SLAPP motion:

- Addressing service of process;

- Drafting a stipulation for a *courtesy* extension of time to respond to the complaint;
- Drafting corporate disclosure statements; and
- Preparing notices of appearance.

In total, Defendants seek to recover $11,085.50 for 11.8 hours of work not related to the anti-SLAPP motion. These fees are not recoverable. Moreover, the inclusion of these "time entries devoted to matters other than the motion to strike . . . undermin[es] the credibility of counsel's other entries." *Christian Research Inst.*, 165 Cal. App. 4th at 1325 ("Counsel's willingness to flout the statutory restriction on the scope of anti-SLAPP fee claims justified the trial court in taking a jaundiced view of the fee request.").

### 4. Ministerial Tasks

Defendants seek to recover attorneys' fees for ministerial or administrative tasks. For example, Defendants seek to recover time spent to arrange for a court reporter and order the hearing transcript. (Siegel Decl. ¶ 14.) Given these billing practices, Defendants' hours should be reduced. *See, e.g., Ambriz v. Arrow Fin. Servs., LLC*, No. CV 07-5423-JFW (SSx), 2008 WL 2095617, at *5 (C.D. Cal. May 15, 2008) (reducing hours for administrative tasks because "it would be unreasonable" to bill clients for those tasks); *D'Lil v. Best W. Encina Lodge & Suites*, No. CV 02-9506 DSF (VBKx), 2010 WL 11655476, at *5 (C.D. Cal. Apr. 13, 2010) (same); *Yeager v. Bowlin*, No. CIV. 2:08-102 WBS JFM, 2010 WL 2303273, at *8 (E.D. Cal. June 7, 2010) ("[S]ecretarial tasks are generally not recoverable as attorney's fees . . . .").

Plaintiff requests that the fees be reduced by $819 for 1.2 hours of fees spent on ministerial tasks. (Siegel Decl. Ex. 14.)

## IV. CONCLUSION

When you strip away the improper requests, and apply *reasonable* hourly rates, you arrive at a total of $84,995.80 for Defendants' anti-SLAPP motion:

| Hourly Rate Reductions | | | |
|---|---|---|---|
| **Attorney** | **Requested Hours** | **Reasonable Hourly Rate** | **Total Recoverable** |
| Theodore J. Boutrous Jr. (partner) | 55.8 hours | $535 | $29,853 |
| Scott A. Edelman (partner) | 17.5 | $535 | $9,362.50 |
| Nathaniel L. Bach (senior associate) | 135.1 hours | $300 | $40,530 |
| Marissa B. Moshell (junior associate) | 113.7 hours | $260 | $29,562 |
| Daniel M. Rubin (junior associate) | 16.6 | $260 | $4,316 |
| Total Costs | N/A | $9,706.28 | $9,706.28 |
| **Total** | | | $123,329.78 |

| Further Reductions | | |
|---|---|---|
| **Category of Reduction** | **Total Requested** | **Proposed Reduction** |
| Scott Edelman's Time (Unnecessary Staffing of Two Partners) | 17.5 hours | 17.5 hours, at a reasonable hourly rate of $535 = $9,362.50 |
| Work Not Related to Anti-SLAPP Motion | $11,085.50 for 11.8 hours of work | $11,085.50 |
| Ministerial Tasks | $819 for 1.2 hours | $819 |
| Unsubstantiated Paralegal/Researcher Fees | Approximately $7,623 for 16.8 hours | $7,623 |
| Total Further Reductions | 46.8 hours | $28,890 |

In sum, based upon reasonable hourly rates, the total that Defendants could potentially recover for *all* hours expended is $123,329.78.  From this amount, an additional $28,890 should be cut, as set forth above, for a total of $94,439.78.  Then, the additional 10% reduction for unnecessary and duplicative work should be applied, resulting in a final recoverable amount of $84,995.80.

DATED:  June 26, 2020                    MILLER BARONDESS, LLP


By: ___*/s/ Amnon Z. Siegel*___
    AMNON Z. SIEGEL
    Attorneys for Plaintiff Herring Networks, Inc.