UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERRING NETWORKS, INC.,<br><br>                   Plaintiff,<br>v.<br>RACHEL MADDOW, et al.,<br><br>                   Defendants. | Case No.: 3:19-cv-1713-BAS-AHG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEY FEES AND COSTS**<br><br>**[ECF No. 35]** |

Before the Court is Defendants' Motion for Attorney Fees and Costs. ECF No. 35. This matter was referred to the undersigned by District Judge Cynthia Bashant. ECF No. 30 at 16. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

I.    **BACKGROUND**

Plaintiff Herring Networks, Inc. ("Plaintiff") filed a complaint for defamation against Defendants Rachel Maddow, Comcast Corporation, NBCUniversal Media, LLC, and MSNBC Cable LLC (collectively, "Defendants"). ECF No. 1. Plaintiff's claim stemmed from a statement Rachel Maddow made on The Rachel Maddow Show on MSNBC. *Id.* Soon after Plaintiff filed suit, Defendants filed a special motion to strike pursuant to California Code of Civil Procedure § 425.16, commonly known as the Anti-Strategic Lawsuits Against Public Participation ("anti-SLAPP") law. ECF No. 18. After considering the parties' arguments, the Court found that "the contested statement is an

opinion that cannot serve as the basis for a defamation claim" and granted Defendants' special motion to strike. ECF No. 30 at 16. Because the Court granted the anti-SLAPP motion, Defendants were permitted to file a motion for attorney fees and costs. *Id.* (citing CAL. CIV. PROC. CODE § 425.16(c)(1)). After Defendants filed their motion for attorney fees and costs (ECF No. 35), the Court set a briefing schedule. ECF No. 36. Plaintiff timely filed its opposition brief, and Defendants timely filed their reply brief. ECF Nos. 37, 38. Plaintiff also filed objections to evidence submitted in Defendants' motion and reply brief. ECF Nos. 37-4, 39. This Order follows.

## II.  LEGAL STANDARD

Under California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney[] fees and costs." CAL. CIV. PROC. CODE § 425.16(c)(1). Under the anti-SLAPP statute, an award of attorney fees to a prevailing defendant is mandatory. *Ketchum v. Moses*, 17 P.3d 735, 741 (Cal. 2001); *Christian Research Inst. v. Alnor*, 81 Cal. Rptr. 3d 866, 871 (Ct. App. 2008). The anti-SLAPP statute is "intended to compensate a defendant for the expense of responding to a SLAPP suit. To this end, the provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 45 Cal. Rptr. 3d 633, 637 (Ct. App. 2006)).

To determine a reasonable attorney fee award for an anti-SLAPP motion, the California Supreme Court has found that "the lodestar adjustment approach should be applied." *Ketchum*, 17 P.3d at 744. For the lodestar approach, the Court begins by "multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

The party seeking attorney fees and costs carries the initial burden of production to establish the reasonableness of the requested fee. *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (citing *Blum v. Stenson*, 465 U.S. 886, 895

n.11 (1984) and *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11. Once the applicant meets its burden of production, the court then determines whether the fee is reasonable. *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (citing *Blum*, 465 U.S. at 895 n.11 and *Camacho*, 523 F.3d at 980). A court has broad discretion in determining what is reasonable. *See Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1222 (S.D. Cal. 2002); *see, e.g.*, *Garrison v. Ringgold*, No. 19cv244-GPC-RBB, 2019 WL 5684401, at *3 (S.D. Cal. Nov. 1, 2019) (explaining that the "court has wide discretion in determining the reasonableness of attorney[] fees.") (citing *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992)).

## III. DISCUSSION

In the instant case, Defendants request an award of attorney fees in the amount of $347,244, based on 384.28 hours incurred in the process of strategizing, researching, and briefing the anti-SLAPP motion, and the fee motion. ECF No. 38 at 3–5; *see* ECF No. 35-1 at 13–14.[1] Additionally, Defendants request costs in the amount of $10,724.36. ECF No. 38 at 6–7. Plaintiff counters that the Court should substantially reduce the fees to $84,995.80. ECF No. 37 at 6, 18. Plaintiff does not contend that Defendants' requested costs should be reduced. *Compare* ECF No. 35-2 at 26 (Defendants initially requested $9,706.28 in costs) *with* ECF No. 37 at 17 (Plaintiffs listed $9,706.28 as a "reasonable [] rate" for initial costs).

### A.    Evidentiary Objections

As a preliminary matter, the Court considers Plaintiff's evidentiary objections. First, Plaintiff objects to various statements made within the Edelman declaration in support of

---

[1] Due to discrepancies between original and imprinted page numbers, page numbers for docketed materials cited in this Order refer to those imprinted by the Court's electronic case filing system.

Defendants' attorney fees motion. ECF No. 37-4 (citing ECF No. 35-2). Second, Plaintiff objects to evidence included in Defendants' reply brief. ECF No. 39. The Court will address these objections in turn.

### 1. *Objections to the Declaration of Scott A. Edelman in support of Defendants' Motion for Attorney Fees and Costs*

Plaintiff objects to fifteen statements in the Edelman declaration. ECF No. 37-4 at 2–9. A few examples of Mr. Edelman's statements at issue include his representations that "[s]ubstantial efforts went into the preparation of this dispositive motion;" "Defendants' counsel also researched the case law surrounding substantially true speech;" "Gibson Dunn was retained on a modified contingency fee basis NBCU agreed to pay Defendants' counsel a rate of $100,000 for the filing and argument on the Anti-SLAPP Motion;" and "[b]ased on my reading of the relevant case law, fee applications submitted in other district courts in California, and my overall familiarity with rates charged by my firm's competitors, it is my understanding that these rates are comparable to the rates charged by peer firms and attorneys with similar skill and experience." *Id.* (quoting ECF No. 35-2). Plaintiff's objections are based on a range of evidentiary principles, such as hearsay, relevance, vagueness, lack of foundation, speculation, lack of authentication, improper legal conclusions, and unfair prejudice outweighing probative value. ECF No. 37-4 at 2–9. Defendants contend that Plaintiff's objections lack merit and are "nothing more than a collateral" attack on Defendants' motion. ECF No. 38 at 5 n.3. Defendants argue that the facts and observations set forth in the Edelman declaration are based on his personal knowledge and experience, and relate directly to their motion. *Id.*

Plaintiff's objections are largely boilerplate objections that cite to evidentiary rules without analysis. *See, e.g., Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, 310 F. Supp. 3d 1089, 1107 (S.D. Cal. 2018). Plaintiff's objections based on lack of personal knowledge, lack of foundation, improper opinion, and hearsay are overruled. There is no information to contradict Mr. Edelman's testimony that the statements in his declaration are within his personal knowledge and based on his review of the business records in this case. *See Makaeff v. Trump Univ., LLC*, No. 10cv940-GPC, 2015 WL 1579000, at *2–*3,

\*4 n.5 (S.D. Cal. April 9, 2015) (overruling similar objections); *Banga v. First USA, NA*, 29 F. Supp. 3d 1270, 1275 n.2 (N.D. Cal. 2014) ("personal knowledge can come from the review of the contents of business records and an affiant may testify to acts that she did not personally observe but which have been described in business records").

As for the remaining objections, "[t]he Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent the evidence is not proper, the Court did not consider it." *Makaeff*, 2015 WL 1579000, at \*4 n.5.

### 2.   *Objections to Defendants' Reply Brief*

Plaintiff also objects to evidence included in Defendants' reply brief, specifically Defendants' submission of a 2014 motion for attorney fees filed by Plaintiff's counsel, Miller Barondess LLP, in *Margosian v. Bank of the West*. ECF No. 39 at 2 (citing ECF No. 38-3). Since reply briefs are limited to matters raised by the opposition or unforeseen at the time of the original motion, Plaintiff argues that it was improper for Defendants to submit the *Margosian* fee application for the first time with its reply. ECF No. 39 at 2.

The remainder of Plaintiff's objection contains unauthorized argument, distinguishing *Margosian* to undermine Defendants' fee application in the instant case by noting the differences in procedural posture, hourly rates, and staffing levels. ECF No. 39 at 2–3. Although the Court would normally consider striking information from a reply that raises new evidence or argument, it will not do so here. Plaintiff is not prejudiced by Defendants' reference to the *Margosian* fee application, since the Court will also consider the arguments presented by Plaintiff in its objections, which are in effect an unauthorized sur-reply.[2]

//

---

[2] The practical effect of this is minimal, since the *Margosian* fee application is entitled to little weight. The *Margosian* fee application is from a state court within the Eastern District of California, outside the relevant community for attorney rates, and the court's ruling on the motion offers no analysis of the court's reasoning. *See Margosian v. Bushell*, No. 10-VCU-238202, 2014 WL 12650875, at \*5 (Cal. Super. Ct. Oct. 24, 2014).

### B. Parties' Positions Regarding Attorney Fees

In their motion, Defendants seek fees for 384.28[3] hours of work, and contend that the number of hours are reasonable because they are related to briefing the anti-SLAPP motion, responding to Plaintiff's motion to supplement the record, or briefing the instant attorney fees motion and reply brief. ECF No. 35-1 at 13–14; ECF No. 38 at 3. Defendants seek hourly rates ranging from $1,335 to $1,525 per hour for partners, $625 to $960 per hour for associates, $460 per hour for paralegals, and $270 for researchers. ECF No. 35-2 at 5–6. Defendants contend that these billing rates are reasonable by touting the experience of their staff and comparing their rates with fee awards in multiple cases in the Central District and Northern District of California. ECF No. 35-1 at 17–18. In support of their motion, Defendants provided a declaration from Mr. Edelman itemizing time spent on each task and amount spent on each cost (ECF No. 35-2); biographies of the partners, senior associate, and mid-level associates who worked on the case (ECF Nos. 35-3, 35-4, 35-5, 35-6, 35-7); the transcript of the oral argument on the anti-SLAPP motion (ECF No. 35-8); an April 2020 Northern District bankruptcy court attorney fee application from another law firm with similar billing rates (ECF No. 35-9); and excerpts from the 2020 and 2018 Thomson Reuters Public Rates Reports (ECF Nos. 35-10, 35-11).

As for Defendants' hourly rate, Plaintiff argues that Defendants are not relying on the "relevant community," the district in which the lawsuit is pending, which is the Southern District of California. Plaintiff notes that the reasonable rates in the Southern District are much lower than the examples used by Defendants from the Central District or Northern District. ECF No. 37 at 5–6, 9–11. Thus, Plaintiff requests that the Court reduce the recoverable hourly rates to $535 for partners, $300 for senior associates, and $260 for junior associates. *Id.* at 11–12. As for Defendants' request for paralegal and researcher fees, Plaintiff argues that Defendants failed to meet their burden of establishing prevailing rates, and thus those should be eliminated. *Id.* at 12–13.

---

[3] 355.5 hours relate to briefing the anti-SLAPP motion or responding to Plaintiff's motion to supplement the record, and 28.78 hours relate to briefing the instant attorney fees motion and reply brief. ECF No. 38 at 3.

As for Defendants' hours worked, Plaintiff argues that they are excessive relative to the procedural posture of the case. ECF No. 37 at 13. Plaintiff also argues that many of the hours worked are duplicative, noting that junior associates' work was revised by a senior associate and then again by two partners. *Id.* at 14–15. Plaintiff submits that only one of the partners' hours should be considered, and that the remaining hours should be subject to a 10% reduction. *Id.* at 15. Plaintiff also argues that certain categories of work performed were not related to the anti-SLAPP motion or were ministerial, and requests that those thirteen hours be deducted. *Id.* at 15–16. Plaintiff's proposed final recoverable amount is $84,995.80. *Id.* at 18.

Defendants respond that although the Southern District is the focus for the reasonable rate inquiry, the Court should consider attorney rates and fee approvals from neighboring districts. ECF No. 38 at 7. Defendants also included numerous cases from the Southern District to support their fees. *Id.* at 7–9. Defendants contend that their paralegal and researcher rates are reasonable because a court has approved similar rates for the same paralegal and researcher in another case. *Id.* at 8–9. As for the hours worked, Defendants respond that the entire lawsuit is the subject of the anti-SLAPP motion and thus all attorney fees expended in the case are recoverable. *Id.* at 3. Defendants further respond that their team structure was reasonable, and that junior attorneys always spend substantial time researching and writing, and more senior attorneys then write, revise, and fine-tune arguments. *Id.* at 5. Defendants also reiterate their detailed time entries and argue that counsel did not overlap by researching the same issues or cases. *Id.* Additionally, upon completing the briefing on the attorney fees motion, Defendants included the time entries for preparation of the motion and reply brief, which brings the updated total requested to 384.28 hours and $347,244.00. *Id.*

### C.  Reasonable Attorney Fees

"When the district court makes its award, it must explain how it came up with the amount. The explanation need not be elaborate, but it must be comprehensible." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). To determine a reasonable attorney fee award under the lodestar approach, the Court first considers whether the hourly

rates and number of hours expended are both reasonable.

### 1. *Reasonable Hourly Rates*

To determine the reasonable hourly rate, the Court looks to the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (internal quotation marks and citation omitted). The burden is on the party requesting attorney fees to produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate"). Evidence that the Court should consider includes "[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). A court can consider other factors, including its own knowledge of the relevant legal market, the complexity of the legal issues at stake, and the reputation and experience of counsel. *See FlowRider Surf, Ltd. v. Pac. Surf Designs, Inc.*, No. 15cv1879-BEN-BLM, 2020 WL 5645331, at *3–*4 (S.D. Cal. Sept. 21, 2020); *569 E. Cnty. Boulevard LLC v. Backcountry Against the Dump, Inc.*, 212 Cal. Rptr. 3d 304, 314 (Ct. App. 2016).

The parties disagree as to the relevant legal community for setting a reasonable rate in this case. Generally, the relevant community is the forum in which the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (citing *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991)). Rates outside the forum may be used "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Gates*, 987 F.2d at 1405. Plaintiff argues that the Southern District of California is the relevant community. ECF No. 37 at 9–11. Defendants do not dispute that "the Southern District of California is the focus of the reasonable rate inquiry," but they also point out

that courts within the Southern District have relied on cases from the Central and Northern Districts to establish a reasonable rate within this district. ECF No. 38 at 7.

The Court finds that the relevant community is the Southern District of California. *Camacho*, 523 F.3d at 979. Although the Southern District is the Court's primary focus, the Court will consider rates for similar work in neighboring and nearby districts, albeit they will be accorded minimal weight. *See, e.g.*, *Smith v. Aetna Life Ins. Co.*, No. 18cv1463-JLS-WVG, 2020 WL 6055147, at *6 (S.D. Cal. Oct. 14, 2020) (explaining that "Plaintiff also cites to numerous other cases in which courts have approved similar rates as reasonable, although these all appear to be cases in the Northern and Central Districts of California. [] However, 'the relevant community is the Southern District of California because it is the forum in which the district court sits.' [] Accordingly, the Court accords minimal weight to these authorities from outside the Southern District of California"); *Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, No. 10cv419-GPC-WVG, 2014 WL 5438532, at *4 n.5 (S.D. Cal. Oct. 24, 2014) (noting that "Plaintiff also presents attorney fee awards in other districts in California; however, those cases are not considered the relevant community for purposes of a reasonable hourly rate and not helpful to the Court"); *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. 2011) (considering rates from the Central and Northern Districts, but relying on the Court's "familiarity with the rates charged by other firms in the San Diego area"); *Deanda v. Savings Investment, Inc.*, No. 05cv0139-DMS-RBB, 2006 WL 8443522, at *4 (S.D. Cal. June 8, 2006) (reducing attorney's rate based on his approved rate in the Central District).

                a.      *Attorneys*

Defendants seek hourly rates for Theodore J. Boutrous, Jr., a partner at Gibson Dunn, who charged $1,450 for 2019 and $1,525 for 2020.[4] ECF No. 35-1 at 16. Mr. Boutrous has

---

[4] As a preliminary matter, just because an attorney charges clients a certain amount does not conclusively make that amount the prevailing market rate—i.e., an attorney's usual hourly rate is relevant, but not determinative, evidence of the prevailing market rate. *See Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006).

over 30 years of legal experience and has received numerous awards for his work as a First Amendment attorney. ECF No. 35-1 at 16. Defendants seek hourly rates for Scott A. Edelman, a partner at Gibson Dunn, of $1,335 for 2019 and $1,395 for 2020. ECF No. 35-1 at 16. Mr. Edelman has over 30 years of experience, and has received numerous awards for his work as a media and entertainment attorney. *Id*. Defendants seek hourly rates for Nathaniel L. Bach, a senior associate at Gibson Dunn, of $915 for 2019 and $960 for 2020. *Id*. Mr. Bach has over ten years of legal experience working as a media and entertainment litigator. *Id*. Defendants seek hourly rates for Marissa B. Moshell, a mid-level associate at Gibson Dunn, of $625 for 2019 and $740 for 2020. *Id*. at 17. Ms. Moshell has three years of legal experience, working on a variety of commercial disputes, including First Amendment, anti-SLAPP, and other media and entertainment actions. *Id*. Defendants seek an hourly rate for Daniel Rubin, a mid-level associate at Gibson Dunn, of $625 for 2019. *Id*. Mr. Rubin has three years of legal experience as a general commercial litigator, including experience with media and entertainment disputes. *Id*.

To support these rates, Defendants rely principally on court-approved hourly rates in the Central and Northern Districts. *See* ECF No. 35-1 at 17–18. One of the cases cited from the Central District involved attorneys from Gibson Dunn. *See ScripsAmerica, Inc. v. Ironridge Global LLC*, No. CV14-03962-SJO-AGRx, 2016 WL 6871280, at *4–*5 (C.D. Cal. Jan. 12, 2016). Defendants also provided a recent fee application from the PG&E bankruptcy case in the Northern District, where the attorneys sought similar rates. ECF No. 35-1 at 18 (referring to ECF No. 35-9). Additionally, Defendants provided the Public Rates Report issued by Thomson Reuters in 2020 ("2020 Rates Report"), which includes rates from the Central and Northern Districts, and the Public Rates Report issued by Thomson Reuters in 2018 ("2018 Rates Report"), which includes rates from the Central, Eastern, Northern, and Southern Districts. ECF No. 35-1 at 18; ECF No. 35-2 at 7 (referring to ECF Nos. 35-10, 35-11). In their reply brief, Defendants cited five cases from the Southern District that approved a range of $622 to $943. ECF No. 38 at 7–8.

Plaintiff responds that these billing rates are excessive, and that Mr. Boutrous and Mr. Edelman should instead rate $525, Mr. Bach should instead rate $300, and Ms. Moshell

and Mr. Rubin should instead rate $260. ECF No. 37 at 9–11. Plaintiff focused much of its argument on Defendants' lack of support from the Southern District as the relevant community, and presented four cases from the Southern District that purport to illustrate the district's lower rates. *Id.* at 11. Plaintiff also listed figures from Defendants' 2018 Rate Report, which showed lower rates in the Southern District than those requested by Defendants. *Id.* at 10.

For the most part, the Court does not find the cases that Defendants rely on from the Central and Northern Districts to be persuasive. They are outside the relevant community, and the subject matter and complexity of the cases are not analogous. Although it is from the Central District, the Court finds that *ScripsAmerica*, a 2016 case from the Central District that analyzed the rates of attorneys from the same law firm, Gibson Dunn, to be relevant. There, the court approved rates of $950 for a partner with 37 years of experience and numerous awards, $700 for a ten-year associate, and $450 for a three-year associate. 2016 WL 6871280, at *4–*5 (reducing from counsel's initial requests of $1,125 for a 37-year partner, $770 for a ten-year associate, and $625 for a three-year associate). The Court has also considered Defendants' proffered 2018 Rate Report insofar as it documents Southern District rates, although these figures refer to rates from 2011 to 2015 and are somewhat dated. *See Camacho*, 523 F.3d at 981 ("in determining the prevailing market rate a [] court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."). The Court has also considered recent fee awards in the Southern District. *See Moreno*, 534 F.3d at 1115 ("judges can certainly consider the fees awarded by other judges in the same locality in similar cases"); *see, e.g.*, *San Diego Comic Convention v. Dan Farr Productions*, No. 14cv1865-AJB-JMA, 2019 WL 1599188, at *13–*14 (S.D. Cal. Apr. 15, 2019) (in a complex, well-known trademark infringement case, finding reasonable the hourly rates of $760 for partners with 28–29 years of experience, $685 for a partner with 14 years of experience, $585 for attorney with 16 years of experience, $545 for an associate with 5 years of experience, from a Top 100 law firm), *attorney fees aff'd by* 807 F. App'x 674 (9th Cir. Apr. 20, 2020); *Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2, *2 n.1 (S.D. Cal. July 30,

2018) (an unopposed fee motion after a successful social security appeal, finding *de facto* hourly rate of $943 reasonable, citing other decisions in the district approving rates from $656 to $886); *Medina v. Metropolitan Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (S.D. Cal. 2015) (in a consolidated employment case, finding $850 for a partner with 38 years of experience, $625 for a partner with 17 years of experience, and $295 for an associate with 3 years of experience was reasonable); *Makaeff*, 2015 WL 1579000, at *4–*5 (in a complex class action with a successful anti-SLAPP motion, finding reasonable the rates of $250 to $440 for associates and $600 to $825 for partners).

The Court has also considered the complexity of the legal issues at stake and the reputation and experience of counsel. *See FlowRider Surf*, 2020 WL 5645331, at *3–*4. Although the issue of defamation is not complex, the posture of this litigation demonstrates that the stakes were high. This case was brought by a competing media outlet and has achieved a high degree of publicity. Defendants had a great incentive to hire the most experienced and qualified counsel available to protect their reputation. Defendants' counsel have a strong reputation for expertise in First Amendment issues and in high-stakes litigation. *See* ECF No. 35-3 (noting Mr. Boutrous's credentials, including numerous awards, his experience arguing "more than 100 appeals, including before the Supreme Court of the United States, 12 different federal circuit courts of appeals, nine different state supreme courts and a multitude of other appellate and trial courts in complex civil, constitutional and criminal matters[,]" and his success in representing the prevailing parties in three recent, high-stakes Supreme Court cases); ECF No. 35-4 (noting Mr. Edelman's credentials, including numerous awards and accolades, and his success in several high-stakes, complex, multi-week jury trials); ECF No. 35-5 (noting Mr. Bach's credentials, including being awarded "2020 Litigator of the Week," and listing his numerous successful high-stakes case outcomes). The Court also relies on its own knowledge of and familiarity with rates in the relevant community. *See PLCM Group v. Drexler*, 997 P.2d 511, 519 (Cal. 2000) ("The value of legal services performed in a case is a matter in which the trial court has its own expertise.").

Based on all of this information, the Court finds that reasonable rates for comparable

work in San Diego are not as high as Defendants assert, but not as low as Plaintiff suggests. The Court finds that reasonable rates in San Diego for attorneys of comparable skill, experience, and reputation are as follows: $1,150 for Mr. Boutrous, $1,050 for Mr. Edelman, $720 for Mr. Bach, $470 for Ms. Moshell, and $470 for Mr. Rubin.[5]

### b. Paralegals

Defendants also seek fees for two paralegals. ECF No. 35-1 at 17. The paralegals are "Lolita Gadberry, a paralegal with 35 years of experience with a standard hourly rate of $460 in 2019 and $480 in 2020, and Duke Amponsah, a paralegal with over twenty years of experience with a standard hourly rate of $480 in 2020." *Id.* Defendants rely on the same cases and information to support the reasonable rate for their paralegals. Plaintiff argues that Defendants have not met their burden as to the paralegal and researcher fees, because they presented no evidence of prevailing rates in the relevant community. ECF No. 37 at 12. Plaintiff also points to two cases from the Southern District, in which the courts denied paralegal fees because insufficient facts were presented. *Id.* (citing *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 10cv0541-GPC-WVG, 2014 WL 6851612, at *6 (S.D. Cal. Dec. 3, 2014) and *Brighton Collectibles*, 2014 WL 5438532, at *5).

The 2018 Rates Report attached to the motion includes paralegal rates in the Southern District from 2011 to 2014. ECF No. 35-11. The range of these rates varies widely from $50 to $305. ECF No. 35-11 at 73, 118, 167–69, 185–87, 197–98, 200–01, 212, 214–16, 258, 261–62, 313–14, 324, 356. Courts in the Southern District have recently approved paralegal fees in the middle of this range. *See, e.g.*, *Aispuro v. Ford Motor Co.*, No. 18cv2045-DMS-KSC, 2020 U.S. Dist. LEXIS 142806, at *11 (S.D. Cal. Aug. 10, 2020) ($200); *James Holcomb & Rotoco, Inc. v. BMW of N. Am., LLC*, No. 18cv475-JM-BGS,

---

[5] Though Defendants separately list rates for work done in 2019 and in 2020 (see ECF No. 35-2 at 5–6), the Court has determined that the current rates listed above are reasonable, without a distinction regarding the year the work was completed. *See Gates*, 987 F.2d at 1406 (finding that "district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds.").

2020 U.S. Dist. LEXIS 26094, at *15–*16 (S.D. Cal. Feb. 14, 2020) ($100); *Puccio v. Love*, No. 16cv2890-W-BGS, 2020 WL 434481, at *4 (S.D. Cal. Jan. 28, 2020) ($195); *San Diego Comic Convention*, 2019 WL 1599188, at *15 ($290); *Lewis v. County of San Diego*, No. 13cv2818-H-JMA, 2017 WL 6326972, at *12–*13 (S.D. Cal. Dec. 11, 2017) ($100 and $200).

Based on its judgment and extensive experience in the Southern District, its thorough review of the parties' submissions regarding paralegal fees, and its independent review of recent paralegal fee awards in the district, the Court finds that, in light of her 35 years of experience, $280 is a reasonable paralegal fee for Ms. Gadberry and, in light of his 20 years of experience, $265 is a reasonable paralegal fee for Mr. Amponsah.

### c. Researchers

Defendants also seek fees for two researchers, Erin Kurinsky and Carla Jones, who charge a standard hourly rate of $270. ECF No. 35-1 at 17. With respect to the researchers, the Court finds that Defendants have failed to produce satisfactory evidence to support the requested rates. Defendants offer no information or documentation justifying the rates for Ms. Kurinsky or Ms. Jones, such as a curriculum vitae, resume, or description of their educational background or work experience. *See* ECF No. 35-1 at 17. "In the absence of any evidence as to the background and experience of the [researchers], the Court is unable to determine the prevailing rate." *Makaeff*, 2015 WL 1579000, at *5. Because Defendants have failed to carry their burden to demonstrate that the researchers' hourly rates are reasonable, the Court denies their request for researcher fees. *See cf. Garrison*, 2019 WL 5684401, at *4; *Zest IP Holdings*, 2014 WL 6851612, at *6.

### d. Summary

In sum, the Court concludes that reasonable rates in this district for those of comparable skill, experience, and reputation are as follows: $1,150 for Mr. Boutrous, $1,050 for Mr. Edelman, $720 for Mr. Bach, $470 for Ms. Moshell, $470 for Mr. Rubin, $280 for Ms. Gadberry, and $265 for Mr. Amponsah. The Court denies Defendants' request for fees for researchers Erin Kurinsky and Carla Jones.

//

### *2. Reasonable Hours Expended*

The party seeking fees bears the "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Computer Xpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 649 (Ct. App. 2001) (internal quotation marks and citation omitted). Although "it is not necessary to provide detailed billing timesheets to support an award of attorney fees under the lodestar method," *Concepcion v. Amscan Holdings, Inc.*, 168 Cal. Rptr. 3d 40, 53 (Ct. App. 2014), the "evidence should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims and whether the hours were reasonably expended." *Christian Research Inst.*, 81 Cal. Rptr. 3d at 870. To that end, the Court may require a prevailing party to produce records sufficient to provide "a proper basis for determining how much time was spent on particular claims." *Computer Xpress*, 113 Cal. Rptr. 2d at 649 (internal quotation marks and citation omitted). The Court should exclude hours "'that are excessive, redundant, or otherwise unnecessary.'" *McCown*, 565 F.3d at 1102 (quoting *Hensley*, 461 U.S. at 434).

Here, Defendants seek an award for 384.28 hours. ECF No. 38-1 at 5. This includes time spent analyzing Plaintiff's complaint and discussing initial strategy; researching and drafting the anti-SLAPP Motion and supporting documents; responding to Plaintiff's opposition brief and evidentiary submission; responding to Plaintiff's *ex parte* Application to Supplement the Record; preparing for and attending the motion hearing; and researching and drafting the attorney fees motion, reply, and supporting documents. ECF No. 35-1 at 13, ECF No. 35-2 at 8–22; ECF No. 38-1 at 3–4.

Plaintiff contends that the hours requested are excessive. ECF No. 37 at 13. First, Plaintiff contends that Mr. Edelman's and Mr. Boutrous's hours should be reduced, or Mr. Edelman's hours completely excluded, because hiring two renowned partners was redundant and unnecessary. *Id*. at 14. Second, Plaintiff contends that Defendants overstaffed this case and used it as a training opportunity. *Id*. at 14–15. Third, Plaintiff contends that the anti-SLAPP fee provision only applies to motion to strike, and not the entire action. *Id*. at 15. Fourth, Plaintiff asserts that Defendants should not recover for ministerial or administrative tasks. *Id*. at 16. The Court will address these challenges in

15

turn.

### a. Whether Fees Beyond the Anti-SLAPP Motion should be Considered

As a threshold issue, the Court will examine whether Defendants' request for attorney fees should be limited to those fees directly related to the anti-SLAPP motion. Plaintiff cites three cases in support of its argument: *S. B. Beach Props. v. Berti*, 138 P.3d 713, 717 (Cal. 2006); *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 46 Cal. Rptr. 2d 542, 544–45 (Ct. App. 1995), and *Christian Research Inst.*, 81 Cal. Rptr. 3d at 872–74. ECF No. 37 at 15. In *Lafeyette Morehouse*, the court reversed the fee award because the trial court awarded fees for work other than on the anti-SLAPP motion. However, *Lafayette Morehouse* was decided prior to the 1997 amendment of section 425.16, which mandated the statute be construed broadly. *See* CAL. CIV. CODE § 425.16; *see also Metabolife*, 213 F. Supp. 2d at 1222–24 (discussing *Lafayette Morehouse* after the 1997 amendment of § 425.16). In addition, the *Lafayette Morehouse* court reduced fees to those directly related to the anti-SLAPP motion because the motion concerned only one of seven causes of action. 46 Cal. Rptr. 2d at 545 (referring to 44 Cal. Rptr. 2d. 46 (Ct. App. 1995)). Plaintiff's references to *Christian Research Institute* and *S. B. Beach Properties* are likewise unpersuasive. In *Christian Research Institute*, the court affirmed the trial court's reductions to the requested 600 hours, not based on counsel working on non-anti-SLAPP filings, but because the case was vastly overstaffed for a simple motion and the billing entries were vague. 81 Cal. Rptr. 3d at 874. In *S. B. Beach Properties*, the court affirmed the trial court's denial of defendants' fee motion, because they were seeking fees for an anti-SLAPP motion they never filed—the plaintiff voluntarily dismissed the case the day before they planned to file the anti-SLAPP motion. 138 P.3d at 715, 717–18.

In this case, "granting the special motion to strike effectively dismissed all of plaintiff['s] claims against defendant[s]. Thus, the entire lawsuit here is subject to the anti-SLAPP motion and, therefore, all attorney[] fees and costs expended in this case 'occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion.'" *Zwebner v. Coughlin*, No. 05cv1263-JAH-AJB, 2006 WL 8455423, at *2 (S.D. Cal. Jan.

24, 2006) (quoting *Metabolife*, 213 F. Supp. 2d at 1223). Thus, as in *Metabolife* and *Zwebner*, "[a]ll of [Defendant]'s attorney fees and expenses were in incurred in connection with the anti-SLAPP motion." *Metabolife*, 213 F. Supp. 2d at 1223 (internal quotation marks omitted). Accordingly, the Court finds Plaintiff's initial argument unavailing, and will consider all of the requested hours, not just the hours spent preparing the anti-SLAPP motion.

                          b.        *Overstaffing*

Regarding the use of multiple attorneys, the Ninth Circuit has recognized that "'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989). Instead, "[a] reduction of fees is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Noyes v. Grossmont Union High Sch. Dist.*, 331 F. Supp. 2d 1233, 1250 (S.D. Cal. 2004) (emphasis in original) (internal quotations omitted).

Thus, the Court is not persuaded that Defendants should have been limited to one partner. *See, e.g.*, *Hammett v. Sherman*, No. 19cv605-JLS-AHG, 2020 U.S. Dist. LEXIS 49793, at *82 (S.D. Cal. Mar. 23, 2020) (approving anti-SLAPP fees for two partners with over 30 years of experience); *Zwebner*, 2006 WL 8455423, at *3 n.2 (noting approval of the use of five attorneys in anti-SLAPP case). Similarly, the Court is not persuaded that the pyramid law firm model of having associates complete work that is then reviewed by partners, without more, is a reason to reduce hours. *Cf. Moreno*, 534 F.3d at 1114–15, 1114 n.2 (discussing various law firm models and concluding that it was error for the district court to speculate "that other firms could have staffed the case differently").

However, the Court finds that some of the time spent was duplicative. "[C]ounsel should not bill for attending the same meetings, internal communications, and communicating with each other, as such time is unnecessary." *Salgado v. T-Mobile USA, Inc.*, No. 17cv339-JLT, 2020 WL 3127931, at *21–*22 (E.D. Cal. June 12, 2020). Courts

have "reduced fee awards for time spent in 'interoffice conferences' or other internal communications." *Id.*; *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1194–95 (S.D. Cal. 2003). Here, Plaintiff points out many examples of internal communications between co-counsel, totaling approximately 19.6 hours. ECF No. 37-1 at 4–5. Accordingly, while the Court recognizes the value of coordination between co-counsel, the Court believes a 5%[6] reduction to the requested fees is appropriate, to more accurately reflect the time billed. *See Moreno*, 534 F.3d at 1112 (explaining that the "court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation"); *see also Klein v. Gordon*, No. 8:17-cv-00123-AB-JPRx, 2019 WL 1751839, at *4 (C.D. Cal. Feb. 12, 2019) (exercising discretion to impose a ten percent "haircut" reduction for clerical work, conferences calls, conversations amongst co-counsel, and preparation of submissions).

       *c.*  *Ministerial or Administrative Tasks*

"[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) (noting that "[i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available"); *Lewis*, 2017 WL 6326972, at *8 ("A fee award should not include time spent on clerical matters, whether billed at an attorney's or paralegal's hourly rate"). Thus, courts have discounted billing entries for "clerical tasks." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).

Plaintiff identified three entries that it labels ministerial. The first, from May 17, 2020, where Ms. Moshell corresponded with the court reporter about the hearing transcript, is already subsumed in the Court's earlier reduction for interoffice

---

[6] In recognition of the value of coordination between co-counsel, and in the interest of transparent calculations, the Court exercises its discretion to reduce the 384.28 requested hours by 5% (i.e., 19.2 hours) instead of excluding the approximately 19.6 hours identified by Plaintiff.

communication, since the same entry includes her speaking with Mr. Boutrous and Mr. Bach. *Compare* ECF No. 37-1 at 9 *with id*. at 7. As to the second, the Court does not agree that finalizing a stipulation is ministerial, and will not exclude that entry. ECF No. 37-1 at 9. However, the Court does agree with Plaintiff that the time spent "research[ing] court reporting and hearing transcription" is ministerial, and will exclude 0.3 hours from Ms. Moshell's total accordingly. ECF No. 37-1 at 9.

### d.  Summary

Using the Court's judgment and experience, and upon a thorough review of the hours expended in this case, in light of the case's complexity and procedural history, the remaining billing entries and total hours billed are appropriate. *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

In sum, Defendants' requested 384.28 hours are reduced to 363.1 as follows: Mr. Boutrous's hours are reduced from 56.4 to 53.5; Mr. Edelman's hours are reduced from 20.1 to 19.1; Mr. Bach's hours are reduced from 137.5 to 130.6; Ms. Moshell's hours are reduced from 134.9 to 128.2 and then to 127.9; Mr. Rubin's hours are reduced from 16.6 to 15.8; Ms. Gadberry's hours are reduced from 15.7 to 14.9; Mr. Amponsah's hours are reduced from 1.4 to 1.3; Ms. Kurinsky's hours are reduced from 1.58 to 0; and Ms. Jones's hours are reduced from 0.1 to 0.

## D.  Costs

Defendants request costs in the amount of $10,724.36. ECF No. 35-2 at 24–26; ECF No. 38-1 at 6–7. These costs include transcript costs, research costs, photocopying costs, process server costs, document retrieval service costs, and courier costs. *Id*. Plaintiff does not contend that Defendants' requested costs should be reduced. *Compare* ECF No. 35-2 at 26 (Defendants initially requested $9,706.28 in costs) *with* ECF No. 37 at 17 (Plaintiffs listed $9,706.28 as a "reasonable [] rate" for initial costs).

Attorneys charging "such expenses to paying clients separate from their hourly rates, [] is consistent with the Court's experience, as well as prior orders in this District

addressing the issue of awardable non-statutory costs." *See Smith*, 2020 WL 6055147, at *12 (collecting cases from the Southern District which approved costs such as: copying fees, courier and messenger fees, mailing charges, legal research fees, electronic research costs, telephone charges, filing fees, and court reporter fees). Accordingly, the Court finds the $10,724.36 in costs included[7] by Defendants as part of their fee request reasonable.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Attorney Fees. ECF No. 35. The Court awards Defendants **fees in the amount of $247,667.50** representing 53.5 hours billed by Mr. Boutrous at $1,150 per hour, 19.1 hours billed by Mr. Edelman at $1,050 per hour, 130.6 hours billed by Mr. Bach at $720 per hour, 127.9 hours billed by Ms. Moshell at $470 per hour, 15.8 hours billed by Mr. Rubin at $470 per hour, 14.9 hours billed by Ms. Gadberry at $280 per hour, and 1.3 hours billed by Mr. Amponsah at $265 per hour, and **costs in the amount of $10,724.36**.

As explained by District Judge Bashant in her order granting Defendants' anti-SLAPP motion: "[a]fter Defendants' motion for attorney fees is resolved, the Court will instruct the Clerk to close this case." ECF No. 30 at 17.

**IT IS SO ORDERED**.

Dated:  February 5, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[7] Both Federal Rule of Civil Procedure Rule 54(d) and this district's Civil Local Rule 54.1, requiring a bill of costs, are based on an entry of judgment, which has not yet occurred here. *See* ECF No. 30 at 17; ECF No. 12 n.2; *see also James Holcomb & Rotoco, Inc.*, 2020 U.S. Dist. LEXIS 26094, at *25–*27 (rejecting argument that prevailing party is not entitled to costs because they failed to submit a bill of costs).